*183 Judge GIERKE
delivered the opinion of the Court.
A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of assault with a dangerous weapon and assault consummated by a battery, in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 USC § 928. The military judge also convicted appellant, contrary to his pleas, of soliciting another person to murder his wife, in violation of Article 134, UCMJ, 10 USC § 934.
The military judge sentenced appellant to a dishonorable discharge, confinement for eight years, total forfeitures, and reduction to the lowest enlisted grade. In accordance with a pretrial agreement, the convening authority approved the adjudged sentence but suspended all confinement in excess of five years for a period of ten years.
The Court of Criminal Appeals, 2001 WL 536028, affirmed the findings in an unpublished decision. However, it held that appellant’s trial defense counsel was ineffective during the sentencing hearing. Therefore, the court reassessed the sentence and affirmed “only such portion of the sentence as extends to a dishonorable discharge, confinement for seven years, reduction to E-l, and forfeiture of all pay and allowances.” Unpub. op. at 16.
This Court granted review of the following issue:
WHETHER THE LOWER COURT ERRED IN REASSESSING APPELLANT’S SENTENCE IN THE ABSENCE OF A COMPLETE RECORD IN EXTENUATION AND MITIGATION OR BY FAILING TO APPLY THE PROPER STANDARD FOR SENTENCE REASSESSMENT TO REMEDY A TRIAL ERROR OF CONSTITUTIONAL MAGNITUDE. SEE UNITED STATES V. BOONE, 49 MJ 187, 195, AND 197-99 (1998).
For the reasons set out below, we set aside the sentence and authorize a sentence rehearing.

Background

During the sentencing hearing, appellant made a lengthy unsworn statement that focused on his mental and emotional condition at the time of the offenses. On April 19, 1989, while he was assigned aboard the battleship USS IOWA, an ordnance explosion in a gun turret 30 feet from his work station killed 47 sailors inside the turret. Appellant’s work area immediately filled with smoke. He ordered the eight sailors under his supervision to don emergency escape breathing devices and to evacuate their work area. He went to the burning turret and helped to extinguish the fire. When the fire was out, he was second in line to enter the turret. He entered the melted interior of the turret and began filling a canvas bag with body parts. He carried two bags of body parts to the ship’s medical office.
Appellant knew ten of the sailors who were killed. On his second trip back from the medical office, he saw a friend’s head fall from a body bag onto the deck. At that point, appellant “lost it.” He was sent to his division officer’s office, where he sat for about four hours. Psychiatrists were brought on board, but appellant did not have an opportunity to talk with them.
Two months after the explosion, appellant was transferred to recruiting duty in Oklahoma. Appellant told the military judge that he had a “nervous breakdown” in 1997, and he was ordered to seek medical treatment at Tinker Air Force Base. He was hospitalized for two days and then began seeing Major John Atkins, a clinical social worker in the Substance Abuse Program, once a week.
Four months after being hospitalized at Tinker, appellant met his now ex-wife, and they were married a month later, in August 1997. His ex-wife testified that appellant accused her of infidelity, starting on their wedding night and continuing “just about every night and day” until they separated.
Shortly after his marriage, appellant was transferred from recruiting duty to the USS JOHN C. STENNIS, homeported in Norfolk, Virginia. He reported for duty on September 30, 1997, and the ship deployed 12 days later.
*184 Appellant told the military judge that within days after his ship deployed, he began having panic attacks and thought about jumping overboard. He reported to the medical office, where he was kept under observation for three days, and was then evacuated to Portsmouth Naval Hospital, where he stayed for one night. He attended stress management classes for five days and began seeing Lieutenant (LT) J.C. Arguello, M.D., a Navy psychiatrist, once a month.
In November, 1997, while still under the out-patient care of LT Arguello, appellant assaulted his wife twice. One assault was committed by hitting his wife in the face and body with his fists, grabbing her by the throat, and throwing her against a wall. The other assault was by pointing a loaded rifle at her. This conduct was the basis for the two violations of Article 128 to which appellant pleaded guilty.
On January 4,1998, at a truck stop, appellant asked a truck driver about the possibility of having his wife killed. According to the truck driver’s testimony, appellant asked how much it would cost to “take her out,” and the truck driver told appellant, “Probably a couple of grand.” Appellant gave the truck driver his name, military address, and a home telephone number. The truck driver reported the conversation to the Federal Bureau of Investigation in Oklahoma City. Appellant and the truck driver had no further discussions. This incident was the basis for the charge of soliciting another to murder his wife.
Shortly after the incident at the truck stop, appellant called his mother and told her what he had done. With her help, he checked into the medical facility at Barksdale Air Force Base on January 8, 1998, but he was sent to the Veteran’s Hospital because there was no room at Barksdale. He remained in the Veteran’s Hospital for five days, where he participated in “group sessions” and “one-on-one with the doctor.”
On January 23, 1998, LT Arguello placed appellant on limited duty for six months. Appellant also began seeing a civilian psychologist, Dr. Thomas Pasquale, and continued to see him until his court-martial.
At trial, the defense presented no medical evidence other than appellant’s unsworn statement during the sentencing hearing. Six days after appellant was sentenced, LT Arguello diagnosed him as suffering from post-traumatic stress disorder.
The Court of Criminal Appeals held that appellant’s civilian defense counsel was ineffective during the sentencing hearing, based on his failure to present evidence of appellant’s mental condition. The court considered 19 pages of medical records that were attached to appellant’s response to the staff judge advocate’s recommendation. The court concluded “that no reasonable tactical purpose existed for not seeking to introduce the extant medical records at sentencing.” Unpub. op. at 14-15. The court below reassessed the sentence and reduced the confinement from eight years to seven years, but it affirmed the dishonorable discharge, forfeitures, and reduction.
On appellant’s motion, this Court admitted the sworn declaration of Dr. Jerry L. Brittain, a clinical psychologist and neuropsychologist. Dr. Brittain reviewed the 19 pages of medical records considered by the court below, and he noted that the medical records reflect 22 different and sometimes contradictory psychiatric diagnoses. He opined that a lay person or attorney would not know the meaning or significance of the numerous acronyms and medical jargon in the records. He opined that a lay person or attorney “could not fully understand how these diagnoses extenuate and mitigate MM1 Doss’s criminal actions and how they bear on the possibility of rehabilitation.” Finally, he pointed out that the records are incomplete. For example, there are references to Family Advocacy, hospitalization at Barksdale Air Force Base, and substance abuse evaluations, but no supporting documentation.

Discussion

Appellant asserts that the court below improperly reassessed the sentence on the basis of an incomplete record and that it used the wrong standard for reassessment. The Government argues that the lower court erred in holding civilian defense counsel was *185 ineffective, that the lower court used the correct standard for reassessment, and that the record was adequate to permit reliable reassessment.
This Court will overturn the lower court’s sentence reassessment only to “prevent obvious miscarriages of justice or abuses of discretion.” Boone, 49 MJ at 195, citing United States v. Jones, 39 MJ 315, 317 (CMA 1994), quoting United States v. Dukes, 5 MJ 71, 73 (CMA 1978). Since the lower court’s holding that civilian defense counsel was ineffective was not challenged by certification under Article 67(a)(2), UCMJ, 10 USC § 867(a)(2), and is not encompassed by the granted issue, we will not reexamine the lower court’s holding in this regard.* Furthermore, in light of our holding that the lower court abused its discretion by reassessing the sentence on the basis of an inadequate record, we will not address the question whether the lower court applied the correct standard for reassessment.
In United States v. Sales, 22 MJ 305 (CMA 1986), this Court set out the rules for sentence reassessment by a Court of Criminal Appeals. If the court can determine that, absent the error, the sentence would have been at least of a certain magnitude, then it may cure the error by reassessing the sentence instead of ordering a sentence rehearing. Id. at 307. A sentence of that magnitude or less “will be free of the prejudicial effects of error.” Id. at 308. If the error at trial was of constitutional magnitude, then the court must be satisfied beyond a reasonable doubt that its reassessment cured the error. Id. at 307. If the court “cannot reliably determine what sentence would have been imposed at the trial level if the error had not occurred,” then a sentence rehearing is required. Id.
In Boone, supra, this Court held that defense counsel’s ineffective representation during sentencing made it impossible to reliably reassess the sentence, because it was impossible to determine what evidence would have been presented by competent counsel. This Court explained:
The record simply does not contain the evidence that the misfeasance of counsel caused to be omitted from the record. Therefore, there is no record from which the Court of Criminal Appeals, acting within its vast but circumscribed powers under Article 66(c), [UCMJ, 10 USC § 866(c),] can determine the sentence that the court-martial would have imposed.... Nor has Boone had the opportunity to develop fully his case in extenuation or in mitigation through the presentation of these witnesses or through the presentation of additional evidence____ In short, here, the record does not contain the evidence omitted by the constitutional error. Boone must have the opportunity to make the record that he did not have the opportunity to make because of the absence of the guiding hand of counsel.
We stress the narrow confines of our holding. We intend no limitation on the power of the Courts of Criminal Appeals to reassess a sentence after other legal error has been identified____ Nor do we suggest that a remand for resentencing is necessary in all cases in which trial defense counsel was constitutionally inadequate .... Here we deal only with a situation in which the inadequacy of counsel has resulted in the omission of evidence that, under the standards of [Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984),] could have made a difference in the sentence imposed if it had been made a matter of record. In such *186 instances, the Court of Criminal Appeals cannot reassess the sentence accurately, see Sales, 22 MJ at 308, because the record is not complete.
49 MJ at 198-99.
This case presents a situation similar to Boone. As Dr. Brittain’s analysis suggests, the 19 pages of medical documentation may be only the tip of the iceberg. Furthermore, it appears that the significance of those 19 pages cannot be fully appreciated without expert testimony. It is impossible to determine what evidence a competent defense counsel would have presented. Thus, civilian defense counsel’s omissions cannot be rendered harmless beyond a reasonable doubt by sentence reassessment. Accordingly, we hold that the court below abused its discretion by reassessing the sentence instead of ordering a rehearing.

Decision

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed as to findings but reversed as to sentence. The sentence is set aside. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing on the sentence may be ordered.

 With respect to the dissenting portion of the Chief Judge’s separate opinion, in United States v. Williams, 41 MJ 134, 135 n. 2 (CMA 1994), this Court recognized that the law-of-the-case doctrine does not preclude this Court from examining the legal ruling of a subordinate court in a case where the Judge Advocate General has not certified the issue. However, we are reluctant to exercise this power and, as a rule, reserve it for those cases where the lower court’s decision is "clearly erroneous and would work a manifest injustice” if the parties were bound by it. See Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 817, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988), cited in Williams, supra. In this case, the Government has not satisfied us that the lower court’s holding was "clearly erroneous and would work a manifest injustice” if adopted for purposes of this case. Accordingly, we will apply the law-of-the-case doctrine.