ERDMANN, Judge,
'with whom GIERKE, Chief Judge, joins (dissenting):
The majority opinion finds that the United States Navy-Marine Corps Court of Criminal Appeals erred in reversing the military judge’s decision to reject Parker’s guilty plea to the charge of missing a movement by neglect. The majority goes on to find that Parker was not entitled to the benefit of his pretrial agreement because he specifically requested an unsuspended bad-conduct dis *467 charge.[1] Because I find that the lower court’s ruling is the law of the case and that Parker is entitled to the benefit of his bargain, I respectfully dissent.
BACKGROUND
This issue arose when Parker attempted to plead guilty pursuant to a pretrial agreement. Under the pretrial agreement, the convening authority agreed to suspend any bad-conduct discharge and any confinement in excess of thirty days. After questioning Parker during the providence inquiry, as required by Rule for Courts-Martial (R.C.M.) 910 and United States v. Care, 18 C.M.A. 535, 40 C.M.R. 247 (1969), the military judge rejected Parker’s plea because he found insufficient direct evidence of Parker’s actual knowledge concerning the movement to satisfy the requirements of a missing movement charge under Article 87, Uniform Code of Military Justice, 10 U.S.C. 887 (2000). The court then granted the defense’s request for a continuance. During the intervening period, the Government withdrew from the pretrial agreement thereby rendering the agreement and its terms void. When the case went back to trial, there was no pretrial agreement in effect.
At trial Parker took the stand and gave the same testimony he had given when questioned during the initial providence inquiry. Trial counsel argued during his closing argument that Parker’s actual knowledge of the movement could be proven by circumstantial evidence, including Parker’s testimony that the upcoming movement was “common knowledge” throughout his unit. Ironically, the military judge then found Parker guilty of the greater offense (missing movement by design) based on the same evidence that he found insufficient during the plea inquiry to establish a lesser included offense (missing movement by neglect). Parker was sentenced to a bad-conduct discharge and five months of confinement.
On appeal, the Court of Criminal Appeals found that the military judge erred in refusing to accept Parker’s plea. The lower court held, in reliance on United States v. Penister, 25 M.J. 148 (C.M.A.1987), that “the military judge’s erroneous rejection of the guilty plea was not a ‘failure of the accused’ to fulfill any material promise or condition in the agreement.” United States v. Parker, 60 M.J. 666, 669 (N.M.Ct.Crim.App.2004). Therefore, R.C.M. 705(d)(4)(B) did not allow the convening authority to withdraw from the pretrial agreement. Despite this ruling, the lower court declined to return Parker to his original position under the pretrial agreement. The court concluded that Parker’s subsequent request in his unsworn statement and in post-trial filings for an unsuspended bad-conduct discharge “was tantamount to withdrawal from that specific provision of the original pretrial agreement, or in the alternative, at least constituted a request to modify that term of the agreement.” Id. at 670.
Parker petitioned this court for review of the lower court’s refusal to grant the remedy he sought. The Government did not certify any issues for appeal. In particular, the Government did not certify an issue concerning the lower court’s conclusion that the military judge erred by rejecting Parker’s guilty plea. We granted review of Parker’s assigned issue as to whether he should have received the benefit of his pretrial agreement once the Court of Criminal Appeals found error by the military judge. The majority opinion now overturns the Court of Criminal Appeals’ decision based upon its conclusion that the lower court erred when it held that the military judge erroneously rejected Parker’s plea — an issue that was not properly raised before this court.
DISCUSSION
I. Error By The Military Judge and The Law of The Case Doctrine
The majority finds that the Court of Criminal Appeal’s decision that the military judge *468 erred was clearly erroneous because the military judge was “well within his discretion in deciding not to accept the plea.” As noted by the majority, the Government did not appeal the ruling of the court below. We have previously held that where the correctness of a ruling by the Court of Criminal Appeals has not been challenged by the appellant or by certification by the Judge Advocate General (TJAG), “we will treat it as the law of th[e] case.” United States v. Grooters, 39 M.J. 269, 272-73 (C.M.A.1994). The ruling of the lower court becomes binding on the parties. United States v. Sales, 22 M.J. 305, 307 (C.M.A.1986). The ruling will not be reconsidered by this court unless “the lower court’s decision is ‘clearly erroneous and would work a manifest injustice’ if the parties were bound by it.” United States v. Doss, 57 M.J. 182, 185 n. * (C.A.A.F.2002).
The majority states that since the law-of-the-case doctrine is a discretionary doctrine, they will decline to apply it when that application would be contrary to the sound administration of justice. As noted, prior to this decision, the standard for applying the law-of-the-case doctrine was whether it was “clearly erroneous and would work a manifest injustice.” Id. In reaching this finding the majority seemingly abandons that standard and fails to recognize that establishing manifest injustice is a heavy burden and can only be proven in the most unusual of cases. See, e.g., United States v. Moran, 393 F.3d 1, 8 (1st Cir.2004) (“[A] litigant seeking to fit within [the] confines [of the manifest injustice exception] must negotiate a steep uphill climb.”); Ellis v. United States, 313 F.3d 636, 648 (1st Cir.2002) (“[A] finding of manifest injustice requires a definite and firm conviction that a prior ruling on a material matter is unreasonable or obviously wrong.”). It is difficult to find manifest injustice where the proper remedy[2] places the Government and Parker in exactly the same position they had voluntarily agreed to prior to the military judge’s rejection of the plea.
Contrary to the conclusion of the majority, there is no manifest injustice here. The Government had every opportunity to certify the Court of Criminal Appeals’ finding of error by the military judge as an issue for appeal. Counsel for the Government admitted at oral argument that the Government made a conscious decision not to certify this issue for appeal. In addition, the Government first signaled its intent to argue that the military judge erred in a citation of supplemental authority submitted onlyjfrre days prior to oral argument.[3] The Government, fully aware of this potential issue, made the conscious decision not to appeal the lower court’s decision and failed even to raise the issue in its briefs.[4] These last minute tactics effectively blindsided both the opposing party and the court.
As the Government made a tactical decision to defend against Parker’s claims rather than certifying any of its own, the decision of the Court of Criminal Appeals to overturn the military judge’s refusal to accept Parker’s plea is the law of the case. See United States v. Simmons, 59 M.J. 485, 488 (C.A.A.F.2004) (finding no manifest injustice where the Government did not certify any challenge to the Court of Criminal Appeals’ ruling); United States v. Kreutzer, 61 M.J. 293, 295 n. 2 (C.A.A.F.2005) (noting that *469 lower court’s ruling is the law of the case where the TJAG has the opportunity to bring the lower court’s ruling before this court and chooses not to do so). By adopting “contrary to the sound administration of justice” and “lack of incentive” standards and finding that the law of the case doctrine does not apply in this ease, the majority has significantly altered, if not eliminated, that doctrine and the “manifest injustice” standard from our jurisprudence. The new standard opens the door for the Government, at the last stages of the appellate process, to raise issues that the appellant and this court had thought were resolved at the lower court. This is not a result that I can accept or endorse.
II. Alternate Solution
Rather than eviscerate the law-of-the-case doctrine, a better approach is to address the underlying rule of procedure to ensure that both parties have the opportunity to appropriately raise pertinent issues in a timely manner. Consideration should be given to revising C.A.A.F. R. 19(b).[5] Under C.A.A.F. R. 19(b), the Government has thirty days in which to certify an issue to this court while under C.A.A.F. R. 19(a), an appellant has sixty days in which to petition for a grant of review. In many cases a judgment or order may be favorable to the Government on one claim or issue and unfavorable on another. To avoid further litigation the Government may be content to accept the favorable portion of the ruling and live with the unfavorable portion. If this court subsequently grants one or more of an appellant’s issues, the government is not allowed to raise new issues unless the lower court’s decision is “clearly erroneous and would work a manifest injustice” if the parties were bound to it. Doss, 57 M.J. at 185 n. *.
If the Government were provided with the right to essentially cross-appeal from granted issues, Government counsel would not need to peremptorily certify issues in split decision eases to protect itself against a possible appeal by the defendant. I therefore recommend that C.A.A.F. R. 19(b) be revised to allow that a certificate for review shall be filed with the court no later than thirty days from the date of the decision of the Court of Criminal Appeals or thirty days from the date on which this court grants review of an issue raised by an appellant, whichever is later.
III. Remedy
Although I conclude that the Court of Criminal Appeals’ ruling on the military judge’s error is the law of the case, I do not accept the lower court’s legal conclusion that no remedy is required. Parker initially agreed to plead guilty to unauthorized absence (AWOL) and missing a movement by neglect. In return the convening authority agreed to suspend any confinement over thirty days and any punitive discharge. When the military judge rejected Parker’s guilty plea to the missing movement charge, the Government withdrew from the pretrial agreement and it no longer had any effect. Parker was tried on the missing a movement by design charge and found guilty. At sentencing, with no protection from a pretrial agreement, Parker attempted to trade a punitive discharge for less time in confinement. He was sentenced to five months of confinement and a bad-conduct discharge. Before the convening authority, he again tried to trade the bad-conduct discharge for a lesser period of confinement.
Since the Court of Criminal Appeals reversed the decision of the military judge that prompted the voiding of the pretrial agreement, Parker now asks that the agreement be reinstated and its terms enforced, including the suspension of a bad-conduct discharge. The majority stresses that after the pretrial agreement was voided, Parker asked on three occasions for a bad conduct discharge, which in the majority’s view is a change of position that should be held against him. However, it is common for parties to change position in response to *470 differing decisions from trial and appellate courts.
It defies logic to conclude that Parker, by asking for a particular punishment based on the current status of his case, modified or withdrew from a pretrial agreement that was not in existence. Parker’s unsworn statement and his clemency requests were made in the context of the ease at that time. He was not attempting to modify the pretrial agreement because there was no pretrial agreement to modify. He was simply doing what he thought best given the circumstances.
As the military judge erred in rejecting Parker’s plea, we must put the parties back in the relative positions they held before the error was made. See Penister, 25 M.J. at 152-53 (reinstating pretrial agreement where convening authority withdrew from agreement based on erroneous ruling by the military judge); see also United States v. Clayton, 25 M.J. 888, 889 (A.C.M.R.1988) (holding that appellant is entitled to the benefit of his pretrial agreement when the Government withdrew from the agreement based on an erroneous ruling by the military judge).
The Government made an informed decision not to appeal the Court of Criminal Appeal’s ruling that the military judge erred in rejecting Parker’s guilty plea and it is therefore the law of the case. The parties should be returned to the position they were in prior to that error. I would reinstate the pretrial agreement. Parker should have the opportunity to plead guilty to AWOL and missing movement by neglect and the convening authority should suspend any confinement in excess of thirty days and also suspend any punitive discharge.

. I am unsure why the majority reaches this issue based on their conclusion that the military judge did not err in rejecting Parker’s plea. If, as the majority finds, the plea was properly rejected and there is no pretrial agreement in existence, then there is nothing for Parker to enforce. As it is unnecessary to the majority’s decision, any discussion in the majority opinion about a pretrial agreement is dicta.

. Recognizing the Court of Criminal Appeal's reversal of the military judge as the “law-of-the-case”, then reinstating the pretrial agreement is the proper remedy.

. On October 6, 2005 the Government, for the first time, submitted authority consisting of four cases which addressed the law-of-the-case doctrine and stated that the "Government will address the cases above, and will argue that this Court is not bound by the NMCCA’s decision that the military judge abused his discretion by rejecting appellant's plea of guilty to missing a movement.” Submission of additional authority is appropriate to direct the court's attention to authority relevant to granted issues, not to introduce new appellate issues.

. The majority opinion exaggerates the lack of an incentive for the Government to appeal as the Government has certified issues for appeal to this court in cases where they have prevailed at the lower court. See United States v. Long, 61 M.J. 326 (C.A.A.F.2005) (certificate for review filed). Moreover, by adopting a subjective "lack of incentive” standard, the majority removes any incentive the Government might have in the future to appeal or certify an issue for review in a timely manner.

. United States Court of Appeals for the Armed Forces, Rules of Practice and Procedure (as amended through October 1, 2004).