UNITED STATES, Appellee

v.

Christopher P. MOFFEIT, Airman First Class
U.S. Air Force, Appellant

No. 04-0442

Crim. App. No. 35159

United States Court of Appeals for the Armed Forces

Argued January 11, 2006

Decided April 3, 2006

CRAWFORD, J., delivered the opinion of the Court, in which
GIERKE, C.J., and EFFRON and ERDMANN, JJ., joined.  BAKER, J.,
filed a separate opinion concurring in the result.

Counsel

For Appellant:  John S. Keffer, Esq. (argued); Colonel Carlos L.
McDade, Colonel Beverly B. Knott, Lieutenant Colonel Mark R.
Strickland, Major Terry L. McElyea, Captain Christopher S.
Morgan, and Captain Jennifer K. Martwick (on brief).

For Appellee:  Major Steven R. Kaufman (argued); Colonel LeEllen
Coacher, Lieutenant Colonel Robert V. Combs, Lieutenant Colonel
Gary F. Spencer, and Major Michelle M. Lindo McCluer (on brief).

Military Judges:  Thomas G. Crossan, Rodger A. Drew Jr., and Ann
D. Shane.

**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION**.

United States v. Moffeit, No. 04-0442/AF

Judge CRAWFORD delivered the opinion of the Court.

Contrary to his pleas, Appellant was convicted of receiving and possessing child pornography, and misusing the Internet in an attempt to entice minors in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2000). The convening authority approved the sentence of a dishonorable discharge, forty-five months of confinement, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade.

FACTS

In light of United States v. O'Connor, 58 M.J. 450 (C.A.A.F. 2003), we set aside the findings of guilty to possessing and receiving child pornography and remanded the case. United States v. Moffeit, 60 M.J. 348 (C.A.A.F. 2004). The lower court was given the option of either dismissing those specifications and reassessing the sentence based on the remaining internet offense, or order a rehearing. Id. The lower court reassessed the sentence reducing the confinement to thirty-three months. The lower court, citing United States v. Sales, 22 M.J. 305 (C.M.A. 1988), said:

> Applying this [Sales] analysis, and after careful consideration of the entire record, we are satisfied beyond a reasonable doubt that, in the absence of Specifications 1 and 2 of the Charge, the military judge would have adjudged a sentence of no less than a dishonorable discharge, confinement for [thirty-three] months, forfeiture of all pay and allowances, and reduction to E-1.

2

United States v. Moffeit, No. 04-0442/AF

United States v. Moffeit, No. ACM 35159, 2004 CCA LEXIS 297, at 3, 2005 WL 11588, at 1 (A.F. Ct. Crim. App. Dec. 8, 2004). Judge Johnson, concurring in part and dissenting in part, indicated she would have returned this case for a new sentence rehearing. Id. at 2004 CCA LEXIS 297, at 4, 2005 WL 11588, at 1. After reassessment, we granted the following issue:

> WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ABUSED ITS DISCRETION BY REASSESSING APPELLANT'S SENTENCE TO INCLUDE A DISHONORABLE DISCHARGE AND 33 MONTHS OF CONFINEMENT RATHER THAN ORDERING A REHEARING ON THE SENTENCE.

In Sales, we held that a Court of Criminal Appeals (CCA), in dismissing a charge, may reassess the sentence and that sentence must be equal to or no greater than a sentence that would have been imposed if there had been no error. 22 M.J. at 308. "Thus, if the court can determine to its satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error . . . ." Id. However, "[i]f the error at trial was of constitutional magnitude, then the court must be satisfied beyond a reasonable doubt that its reassessment cured the error." United States v. Doss, 57 M.J. 182, 185 (C.A.A.F. 2002) (citing Sales, 22 M.J. at 307); see also United States v. Buber, 62 M.J. 476 (C.A.A.F. 2006); United States v. Berry, 61 M.J. 91 (C.A.A.F. 2005).

3

Further, it is error for a lower court to use an incorrect standard. United States v. Baier, 60 M.J. 382 (C.A.A.F. 2005).

We hold that the CCA correctly applied Sales. We note that the lower court has reviewed the records of a substantial number of courts-martial involving convictions for child pornography activities and offenses involving sexual misconduct with children and has extensive experience with the level of sentences imposed for such offenses under various circumstances. In this case, a substantial maximum was available based on the remaining charge and specification. The reassessed sentence was well below that maximum. The remaining charge, involving an effort to solicit children for sexual activity via a website posted on the Internet, was the most serious offense and had a negative impact in the community around Shaw Air Force Base. The website generated a number of hostile e-mail responses and several complaints to law enforcement officials. The Chief of Police for Sumter, South Carolina, was "appalled" when she learned that a member of the United States Air Force had created the site. Thus, we hold that the CCA did not abuse its discretion in concluding that it could determine to its satisfaction that, absent any error, the adjudged sentence for the remaining offense would have been at least the severity of the sentence that the court approved on reassessment.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

United States v. Moffeit, No. 04-0442/AF

BAKER, Judge (concurring in the result):

I agree with the majority's conclusion that the Air Force Court of Criminal Appeals did not abuse its discretion in reassessing Appellant's sentence. Therefore, I also agree with the result. However, I believe we are nearing a crossroads on sentence reassessment under United States v. Sales, 22 M.J. 305 (C.M.A. 1986), if we have not already reached it. In my view, we should either reassess the continued viability of the Sales presumption or offer further guidance on its application. This case offers an opportunity to do so.

The law invokes and accepts a number of presumptions. For example, "military judges are presumed to know the law and to follow it, absent clear evidence to the contrary. . . . [A]ppellate judges of the Courts of Criminal Appeals are deserving of no less a presumption." United States v. Mason, 45 M.J. 483, 484 (C.A.A.F. 1997) (citations omitted). In addition, "in the absence of evidence to the contrary, court members are presumed to have followed the military judge's instructions." United States v. Pollard, 38 M.J. 41, 52 (C.M.A. 1993) (quotation marks omitted). And, of course, the law presumes the innocence of an accused, notwithstanding anything that may be known before trial, until the government proves each element of the crime beyond a reasonable doubt. "In the courtroom, the presumption of innocence means not only that the Government

bears the burden of proving every element of crime beyond a reasonable doubt, but that the trier of fact -- panel, jury, or judge -- approaches the case without negative predisposition drawn from the accused's presence in the courtroom." United States v. Washington, 57 M.J. 394, 402 (C.A.A.F. 2002) (Baker, J., concurring). Indeed, law would operate with great difficulty were it not for the use of presumptions. Presumptions are pragmatic creations, "rooted less in the absolute certitude that the presumption is true than in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process." Richardson v. Marsh, 481 U.S. 200, 211 (1987).

In Sales and its antecedents, we adopted a further presumption of law that a Court of Criminal Appeal could, in certain contexts, "determine to its satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity. . . ." Sales, 22 M.J. at 308. Of course, as Appellant points out, there is a certain leap of logical faith involved in such an assumption. Absent clairvoyance, we cannot actually know how a military judge or a panel of members would have sentenced an appellant following a change in factual circumstances. This is especially true within a sentencing construct not based on guidelines or bands, but on discretionary

United States v. Moffeit, No. 04-0442/AF

sentence maximums and individualized adjudication.  However, this Court nonetheless concluded in Sales that the lower court may reassess an appropriate sentence for an offense so long as the reassessed sentence "is no greater than that which would have been imposed if the prejudicial error had not been committed."  Id.  Our holding in Sales was based on an understanding that given the substantial experience of the lower court, it could act in accordance with the above-noted presumption and accurately reassess an appropriate sentence. See United States v. Hawes, 51 M.J. 258, 260 (C.A.A.F. 1999).

Heretofore, this Court's review for abuse of discretion has been case specific, conveying something of a "knowing it when we see it" feel.  This approach reflects reasonable and principled views regarding what Sales means and how it should apply. However, there are important public policy and legal policy reasons to enjoin a more predictable framework for reviewing sentence reassessments.  Among other things, there is considerable societal cost in time, money, and emotional investment when a sentence is reassessed by a Court of Criminal Appeals and then overturned by this Court -- sending it back years later for a sentence rehearing.  Finality is lost. Sentencing witnesses must be recalled to testify about events long since past.  Military members must also be pulled from the line of duty.  As a result, I believe we should identify, in a

3

nonexhaustive fashion, factors we will use to review reassessments of the Courts of Criminal Appeals.

In other words, we should identify those factors that buttress the presumption that appellate judges can indeed reassess a sentence for the offense involved. Otherwise, we should consider whether to abandon the presumption altogether. I believe the following nonexhaustive list of factors is relevant:

(1) whether there are changes in the penalty landscape, including instances where charges with significant exposure or aggravating circumstances are taken off the table. United States v. Buber, 62 M.J __ (8) (C.A.A.F. 2006);

(2) whether an appellant chose sentencing by members, instead of by military judge alone. As a matter of logic, judges of the Courts of Criminal Appeals are more likely to be certain of what a military judge alone would have done than what a panel of members would have done. Moreover, where an appellant selected sentencing by members, there may be due process considerations if sentence reassessment is conducted by appellate judges;

(3) the nature of the remaining offenses. Are the remaining offenses of the sort that a Court of Criminal Appeals should have the experience and familiarity with to reliably determine what sentence would have been imposed at

4

trial by the military judges or members?  Do the remaining offenses fit within a particular normative range based on repetition and scale within a construct of individualized sentencing based on individual offenses?  Use or possession of certain drugs and unauthorized absence offenses might fit this category;

(4)  whether the Court of Criminal Appeals identified and evaluated the factors that informed its reassessment decision on the record.  We should afford greater deference to a clear and logical reassessment on the record.

Although there will always remain room for debate about the application of law to fact when dealing with a presumption rather than the reality of knowing what the factfinder would have actually done, if this Court cannot identify a list of factors that underscore this presumption, I wonder if we shouldn't conclude that Sales is unworkable as a uniform, predictable, and fair mechanism to reassess sentences.

At this time, my view is that Sales is a viable and valuable mechanism.  It promotes judicial economy, economy of military force, and the government's and the appellants' interests in finality.  And it is fair in situations where Court of Criminal Appeals judges can indeed reliably determine what the factfinder would have done.

Applying these factors to the circumstances of this case, I would affirm. First, the original sentencing action was before a military judge alone, increasing the probability that experienced judges sitting on the Court of Criminal Appeals could determine what a military judge would have done on sentencing, although it is noteworthy that one appellate judge dissented.

Second, the Court of Criminal Appeals identified the correct framework for addressing sentence reassessment and applied it to the facts of this case. However, the Court of Criminal Appeals did not develop its analysis with respect to the possibility that Appellant might have received a bad-conduct discharge rather than a dishonorable discharge at trial, so its determination on this point merits less deference.

Third, the relative change in sentencing landscape was significant. Appellant's original exposure was to forty-five years. Following the dismissal of Specifications 1 and 2, Appellant was exposed to fifteen years of confinement. This fact weighs most heavily in the direction of a rehearing. On the other hand, the prosecution had asked for four years of confinement at Appellant's original trial. In addition, the dismissed specifications were for offenses regularly reviewed by the Court of Criminal Appeals and therefore the experienced judges on the court would have a well-founded appreciation for

the range of sentence imposed by military judges.  Most importantly, the remaining offense considered by the Court of Criminal Appeals on reassessment was a serious offense, at least as serious as the dismissed offenses, with significant aggravating factors.

In summary, while the change in sentencing landscape weighs in favor of a sentence rehearing, the remaining factors place this case within the zone of Sales reassessment.  The original sentence was determined by a military judge, the Court of Criminal Appeals applied the correct Sales framework, and the dismissed charges were of a nature generally reviewed by Court of Criminal Appeals.  Finally, the reassessed offense was serious, bore aggravating circumstances, and was also of a nature that a Court of Criminal Appeals would have experience with and practical knowledge of what military judges normally award.

On reassessment, Appellant stood convicted of trying to entice multiple young children into engaging in sexual relations under the guise of an Internet invitation to participate in a pagan ritual.  Among other things, Appellant's advertisement cautioned that participants must be ages thirteen to twenty years old, must not have any sexually transmitted diseases, and "must go through no matter what intales [sic]."  For this offense, the Court of Criminal Appeals sentenced Appellant to

7

thirty-three months and a dishonorable discharge, in lieu of the original sentence of forty-five months, and a dishonorable discharge.  On such facts, it is within the reasonable discretion of the Court of Criminal Appeals to conclude that a military judge sitting alone would have awarded a dishonorable discharge as opposed to a bad-conduct discharge to a servicemember convicted of enticing underage children to have sex through an Internet advertisement.