UNITED STATES

v.

Airman First Class Charles M. JUNIOR,
United States Air Force.

ACM S31054.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 8 Dec. 2005.

19 Oct. 2007.

Appellate Counsel for Appellant: Colonel
Nikki A. Hall, Lieutenant Colonel Mark R.

Strickland, Major Anniece Barber, and Major Maria A. Fried.

Appellate Counsel for the United States: Colonel Gerald R. Bruce, Major Matthew S. Ward, and Major Kimani R. Eason.

Before WISE, BRAND, and HEIMANN, Appellate Military Judges.

## OPINION OF THE COURT

HEIMANN, Judge:

Consistent with his plea, the appellant was convicted in a special court-martial of disobeying an order imposing a dorm curfew, dereliction of duty for having a dog in his dorm room, divers use of marijuana, use of cocaine, possession of marijuana, wrongful appropriation of a vehicle, and breaking restrictions in violation of Articles 92, 112a, 121, and 134, UCMJ, 10 U.S.C. §§ 892, 912a, 921, 934. The military judge sentenced the appellant to a bad-conduct discharge, confinement for 6 months, reduction to E–1, and forfeiture of pay. The convening authority approved only the bad-conduct discharge, confinement for 6 months, and reduction to E–1. On appeal, the appellant asserts two errors.

### Facially Deficient Specification

The first alleged error is that Specification 2 of Charge I is facially deficient because it fails to state an offense. On referral, Specification 2 of Charge 1 provided:

> In that AIRMAN FIRST CLASS CHARLES M. JUNIOR, United States Air Force, 3rd Equipment Maintenance Squadron, Elmendorf Air Force Base, Alaska, who knew or should have known of his duties on or about 28 October 2005, was derelict in the performance of those duties in that he willfully failed to obey dorm regulations, as it was his duty to do.

Prior to arraignment and without defense objection, the trial counsel advised the military judge that they were "going to add and clarify the language to describe the dorm regulation that was violated." The prosecution then went on to add the words, "Wing Instruction 32–6003, by refraining from having a pit bull in his dorm room" after the word "regulation" in the specification. Thus the new specification read,

> In that AIRMAN FIRST CLASS CHARLES M. JUNIOR, United States Air Force, 3rd Equipment Maintenance Squadron, Elmendorf Air Force Base, Alaska, who knew or should have known of his duties on or about 28 October 2005, was derelict in the performance of those duties in that he willfully failed to obey dorm regulations, Wing Instruction 32–6003, *by refraining* from having a pit bull in his dorm room, as it was his duty to do. [Emphasis added.]

The appellant then pled guilty to all charges and specifications. On appeal the appellant now asserts that the conviction for this specification must be set aside because the new specification is facially defective. Specifically, *refraining* from having a pit bull in the dorm is not an offense. The appellant, citing *United States v. Watkins*, 21 M.J. 208 (C.M.A.1986), argues that a defective specification will be sustained when the appellant pleads to the charge and can show no prejudice "unless the indictment cannot within reason be construed to charge a crime." *Id.* at 210.

A claim that a specification fails to allege an offense is not waived. Rule for Courts–Martial (R.C.M.) 905(e). These claims are reviewed de novo by this Court. *United States v. Mayo*, 12 M.J. 286, 288 (C.M.A. 1982).

■ While it is clear that post-conviction challenges are viewed with considerable suspicion, *see Watkins*, 21 M.J. at 209, the Court of Appeals for the Armed Forces has recently again emphasized that "a facially deficient specification cannot be saved by reference to proof at trial." *United States v. Crafter*, 64 M.J. 209, 211 (C.A.A.F.2006). This specification fails to state an offense on its face and is therefore dismissed. We will address the impact of this dismissal in the decretal paragraph below.

### Illegal Pretrial Punishment

The appellant also asserts he was subjected to illegal pretrial punishment. At trial, the appellant alleged he was subjected to

illegal pretrial punishment in violation of Article 13, UCMJ, 10 U.S.C. § 813, and requested ten days of administrative credit for every day his confinement constituted illegal punishment. The appellant spent a total of 45 days in pretrial confinement. The appellant's claim stems only from the 12 days he spent at the Cook Inlet Pretrial Facility (CIPT) managed by the Alaska Department of Corrections (ADC). The appellant spent his first seven days of pretrial confinement in the CIPT before being transferred to an Air Force facility in Montana. He then returned to the CIPT, in anticipation of trial, for his final five days of pretrial confinement. The appellant does not dispute the time held in the Air Force facility. In fact, the appellant's claim centers on the disparity between the CIPT and the Air Force facility and the lack of a Memorandum of Agreement (MOA) between the CIPT and the Air Force to standardize the treatment between the two facilities. The military judge denied his claim for any additional credit.

Whether an appellant is entitled to credit for a violation of Article 13, UCMJ, presents a "mixed question of law and fact." *United States v. McCarthy*, 47 M.J. 162, 165 (C.A.A.F.1997) (quoting *Thompson v. Keohane*, 516 U.S. 99, 113, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995)). We will not overturn a military judge's findings of fact unless they are clearly erroneous. *United States v. Mosby*, 56 M.J. 309, 310 (C.A.A.F.2002). We "review *de novo* the ultimate question whether an appellant is entitled to credit for a violation of Article 13." *Id.*

The military judge received evidence and heard argument prior to finding that the appellant was not subjected to illegal pretrial punishment. In support of the motion at trial, the appellant testified. Based upon this testimony alone, the military judge made several findings of fact. Those relevant to this claim are:

2. Elmendorf Air Force Base does not have a pretrial [confinement] facility.... [T]he accused was sent to the [CIPT] for confinement. Currently, no formal memorandum of understanding or agreement exists between the ADC and the Air Force concerning how Air Force confinees, pre- or post-trial, are to be treated while in the CIPT. However, correction officials are provided a memorandum from the 3rd Security Forces Squadron Commander requesting certain procedures be complied with in the handling and confinement of Air Force confinees.

3. Air Force Instruction [AFI] 31–205, *"The Air Force Corrections System,"* ... requires a written MOA.... [T]he Air Force does not have a formal MOA in place with the ADC.

4. ... While confined at the CIPT, the *accused was required to wear a yellow or gold jumpsuit in accordance with ADC requirements.* The purpose of the colored jumpsuit is to permit correction officials to identify confinees by their status. *Yellow suits are issued to alleged felons and those previously convicted of a felony* [emphasis added]. The CIPT does not differentiate between military prisoners and federal and state prisoners when determining what color jumpsuit to issue a confinee. If the CIPT staff is not aware of why the confinee is being held, the confinee will be issued a yellow jumpsuit in order to better protect staff members.

5. The purpose of differentiating between confinees and issuing different color jumpsuits is not meant to punish, rather it is to ensure the safety of CIPT officials and to maximize the efficiency of the corrections process.

6. While residing in the CIPT, the accused was not punished by being required to wear a yellow or gold jumpsuit. This was done in accordance with ADC policy. Furthermore, the accused was not subjected to adverse living conditions, was not denied food, medical care, restroom or exercise facilities. He was not treated differently by ADC officials because of his status as a military confinee. The accused was not embarrassed or demeaned while in the CIPT. He was not assaulted or endangered during his stay.

While not noted in the military judge's findings, the following additional facts are also established by the record. The appellant was not kept with other prisoners. He only had a "concrete chair" in his cell. Final-

ly, unlike the Air Force confinement facility the CIPT did not have a "work program," "drug treatment" or a "library" and "exercise facility."[1]

Our review begins with our superior court's recent ruling in *United States v. Adcock*, 65 M.J. 18 (C.A.A.F.2007).[2] The court in *Adcock*, facing a similar claim of illegal punishment based upon the Air Force violating their own rules, first notes that AFI 31–205, *The Air Force Corrections System* (7 April 2004), expressly directs that outside confinement facilities "*must* meet or exceed what would be provided in a DoD facility." *Adcock*, 65 M.J. at 24. Of concern to the court in *Adcock* was that the accused was housed in pretrial confinement for 157 days with convicted criminals and was required to wear a colored jump suit that was the same as the convicted prisoners, contrary to pretrial confinement rules that prohibit the commingling of prisoners and the use of improper prison jumpsuits. *Id.* at 25. The court pointed out

> [d]espite these prohibitions, there have apparently been 'numerous' challenges to Travis AFB's pretrial confinement program prior to *Adcock's* appeal. Nevertheless Air Force authorities failed to take any action to remedy the conditions, request that the rules be changed or request a secretarial waiver from the provisions [of the Air Force Instruction].

*Id.* (internal citations omitted). Based upon these findings the court in *Adcock* held:

> Violations of service regulations prescribing pretrial confinement conditions *provide a basis* for a military judge … to grant additional credit under the criteria of R.C.M. 305(k). They *do not independently trigger a per se right* to such credit enforceable by the service member. Accordingly, a military judge should consider violations of service regulations as a basis

for pretrial confinement credit under R.C.M. 305(k) when those regulations reflect long-standing concern for the prevention of pretrial punishment and the protection of servicemembers' rights.

Administrative relief under R.C.M. 305(k) is appropriate where, as here, confinement officials have knowingly and deliberately violated provisions of service regulations designed to protect the rights of presumptively innocent servicemembers.

*Id.* (emphasis added).

Under *Adcock*, it is clear that the military judge and this Court are authorized to grant pretrial confinement credit if there has been a violation of service regulations by Air Force officials amounting to an "abuse of discretion." *Id.* at 24; R.C.M. 305(k). This abuse of discretion threshold is crossed when regulatory violations demonstrate a disregard by the Air Force of the duty to "ensure that servicemembers who are housed in civilian jails are treated in a manner that recognizes the presumption of innocence." *Adcock*, 65 M.J. at 23.

In this case, the trial defense counsel argued that the lack of a MOA with the confinement facility coupled with the fact that the accused was deprived of a work program and drug treatment at the CIPT, in violation of AFI 31–205, amounted to illegal pretrial punishment.[3] While this trial was before the *Adcock* decision these contentions go to the heart of the question raised in *Adcock*.

In light of *Adcock*, the question now becomes: When do violations of service regulatory confinement standards amount to an abuse of discretion because they demonstrate a disregard by the Air Force of the duty to ensure that servicemembers who are in pretrial confinement are treated in a manner that recognizes the presumption of inno-

---

1. The military judge found that the appellant was not denied exercise facilities. This is based upon the appellant's testimony that he was allowed to go out into the "yard." Thus he was not denied a place to exercise. There is no evidence that the CIPT had an "exercise facility." The appellant testified that Malstrom AFB confinement had an "exercise facility."

2. At the time of the military judge's ruling, questions of "illegal pretrial punishment" centered on the issue of intent. The *Adcock* decision requires additional analysis.

3. The fact that the appellant was required to wear a yellow jumpsuit is only contained in the motion submitted by the appellant at trial. The Prosecution agreed to the facts concerning the jumpsuit in their response to the motion.

cence? Clearly not every regulatory violation equals an abuse of discretion undermining the presumption of innocence. The court in *Adcock* was particularly concerned that Air Force officials were long aware of the regulatory violations and that the duration amounted to a "knowing and deliberate violation of the [Air Force's] confinement regulations." *Id.* at 28. So, courts must look to the types of regulatory violations and the duration of the Air Force's awareness of the regulatory violations to determine when a regulatory violation becomes an abuse of discretion.

■ Looking first to the types of regulatory violations. In this case, the local confinement facility did not offer the appellant a full range of services expected of an Air Force confinement facility. Specifically, the CIPT did not have a work program, drug treatment program, a library, or a gym. Of particular significance here however, is the relatively short duration of the appellant's stay in the CIPT. Deprivation of services like those complained of here, for short confinement durations, simply do not rise to the level of being an abuse of discretion by Air Force officials even when they knowingly permit them to occur in short term confinement facilities, whether civilian or military. When pretrial confinement is for a limited duration, these types of violations, without more, do not undermine the appellant's presumption of innocence. This is particularly the case when: 1) The appellant is "not subjected to adverse living conditions" and is "not denied food, medical care, restroom or exercise facilities"; 2) It is clear from the circumstance that a facility is used as a transition facility or short duration facility; and 3) The majority of pretrial confinement is in a facility that meets all of the appropriate regulatory standards. Therefore, we conclude the deprivation of the missing services, in this case, does not raise a question of abuse of discretion requiring further consideration under *Adcock*.

There are, however, two factors that require greater analysis regarding an *Adcock* credit. These factors are the length of the Air Force's awareness of the deficiencies of the CIPT and the requirement of the appellant to wear a yellow or gold jumpsuit in accordance with CIPT requirements.

■ At trial, the appellant argued the government failed for over eight months to negotiate a MOA with the CIPT, and this failure alone amounts to an intent to punish. The military judge found that the lack of a MOA did not amount to an intent to punish. We agree with the military judge, but *Adcock* requires this Court to inquire further. In this case the Air Force was actively working on an MOA with the local confinement facility. In addition, the military judge found the Air Force had provided an interim "memorandum" to the confinement facility "requesting certain procedures be complied with in the handling and confinement of Air Force confinees." Of particular note, in the instructions to the facility, is the mandate that the pre-trial detainees will remain segregated and they will not be hired out for prison work programs. Finally, the interim memorandum asks the confinement facility to "notify the [military] of any adversities" in the person's confinement. We therefore hold that the failure of Air Force officials to complete a MOA with the facility, without more, did not amount to an abuse of discretion, in light of the clear efforts by the Air Force to reach a MOA, the existence of an interim memorandum designed to address the treatment of pre-trial confinees, and the fact that the Air Force only used the CIPT as a temporary transition facility.

■ This brings us to the final issue; the wearing of a yellow jumpsuit generally reserved for felons. While the prohibition against wearing prisoner garb is rooted in R.C.M. 304(f) and Article 13, UCMJ, itself, our superior court in *United States v. James*, 28 M.J. 214 (C.M.A.1989), has previously held that it alone does not constitute a per se violation of R.C.M. 305(k) or Article 13, UCMJ. Specifically, the Court in *James* held if a requirement to wear an orange jumpsuit, vice a uniform, is "consistent with the internal operating procedures of the jail, and all detainees [are] required to wear this garb," then there is no violation. *James*, 28 M.J. at 216. The appellant made no contrary assertion at trial and in fact the draft MOA between the Air Force and Alaska Correc-

tions submitted by the defense at trial expressly recognizes that the CIPT can require pretrial detainees to wear the same uniform as other federal prisoners. In addition and as explained above, the military judge expressly found, and we agree, the appellant was not mistreated in any fashion while confined. Thus, taken as a whole, the wear of the yellow jump suit does not entitle the appellant to an *Adcock* credit.

Therefore we find, under the facts of this case, the Air Force officials did not abuse their discretion despite their failure to ensure that all relevant service regulation requirements regarding pretrial confinees were met. While the lack of a MOA causes concern, under the facts of this case, it does not equal an abuse of discretion. Therefore, we find the appellant was not subject to illegal pretrial punishment under Article 13, UCMJ.

### Sentence Reassessment

Because we dismissed Specification 2 of Charge I, we next analyze the case to determine whether we can reassess the sentence. *See United States v. Doss,* 57 M.J. 182 (C.A.A.F.2002). "If the court can determine that, absent the error, the sentence would have been at least of a certain magnitude, then it may cure the error by reassessing the sentence instead of ordering a sentence rehearing." *Id.* at 185 (citing *United States v. Sales,* 22 M.J. 305, 307 (C.M.A.1986)). We conclude that we can.

The accused pled guilty to seven specifications. The dismissed specification was the least significant by an order of magnitude. It also had no impact on the maximum permissible sentence. Reassessing the sentence, we are convinced beyond a reasonable doubt that the military judge would have awarded the same punishment regardless of the error. Furthermore, we find the sentence to be appropriate. *See United States v. Peoples,* 29 M.J. 426, 428 (C.M.A.1990).

### Conclusion

The findings, as modified, and sentence, as reassessed, are correct in law and fact, and no additional error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Reed,* 54 M.J. 37, 41 (C.A.A.F.2000).

Accordingly, the findings, as modified, and sentence, as reassessed, are

AFFIRMED.