UNITED STATES, Appellee

v.

William R. SAVALA, Torpedoman's Mate Second Class
U.S. Navy, Appellant

No. 10-0317

Crim. App. No. 200800818

United States Court of Appeals for the Armed Forces

Argued January 11, 2011

Decided May 17, 2011

EFFRON, C.J., delivered the opinion of the Court, in which
ERDMANN and RYAN, JJ., joined. STUCKY, J., filed a separate
dissenting opinion in which BAKER, J., joined.


<u>Counsel</u>


For Appellant: <u>Philip D. Cave</u>, Esq. (argued); <u>Major Kirk
Sripinyo</u>, USMC (on brief).

For Appellee: <u>Captain Mark V. Balfantz</u>, USMC (argued); <u>Colonel
Louis J. Puleo</u>, USMC, and <u>Brian K. Keller</u>, Esq. (on brief);
<u>Commander Kimberly D. Hinson</u>, JAGC, USNR.


Military Judges: David S. Oliver and John Wooldridge


**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

<u>United States v. Savala</u>, No. 10-0317/NA

    Chief Judge EFFRON delivered the opinion of the Court.

    A general court-martial composed of officer and enlisted members, convicted Appellant, contrary to his pleas, of attempted larceny, rape, unlawful entry, and adultery, in violation of Articles 80, 120, 130, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 920, 930, 934 (2006). The sentence adjudged by the court-martial and approved by the convening authority included a dishonorable discharge, confinement for seven years, forfeiture of $898.00 pay per month for eighty-four months, and reduction to the pay grade of E-1. <u>United States v. Savala</u>, No. NMCCA 200800818, 2010 CCA LEXIS 9, at *1, 2010 WL 317687, at *1 (N-M. Ct. Crim. App. Jan. 28, 2010) (unpublished).

    On Appellant's petition, we granted review of the following issue:

> WHETHER THE LOWER COURT ERRED WHEN IT HELD THAT THE DENIAL OF APPELLANT'S RIGHT TO CROSS-EXAMINE HIS ACCUSER WAS HARMLESS BEYOND A REASONABLE DOUBT.

For the reasons set forth below, we conclude that the restriction on the scope of cross-examination constituted prejudicial error.

### I.  EXCLUSION OF EVIDENCE UNDER M.R.E. 412

Military Rule of Evidence (M.R.E.) 412 limits the admissibility of specified forms of evidence in sexual offense cases.  The rule serves "to protect victims of sexual offenses from the degrading and embarrassing disclosure of intimate details of their private lives while preserving the constitutional rights of the accused to present a defense." United States v. Banker, 60 M.J. 216, 219 (C.A.A.F. 2004).

The present case concerns M.R.E. 412(a), which generally prohibits the introduction of evidence regarding the alleged victim's prior sexual behavior or the victim's sexual predisposition.  The rule contains a number of exceptions to the general prohibition, including a provision for the admissibility of "evidence the exclusion of which would violate the constitutional rights of the accused."  M.R.E. 412(b)(1)(C). See Banker, 60 M.J. at 221 (noting that this exception "addresses an accused's Sixth Amendment right of confrontation and Fifth Amendment right to a fair trial").

The Sixth Amendment right of confrontation includes "the constitutionally protected right of cross-examination."  See Davis v. Alaska, 415 U.S. 308, 316-17 (1974).  The right of cross-examination includes the opportunity to inquire into otherwise inadmissible matters if the prosecution, through its presentation, opens the door to consideration of such matters.

See United States v. Moulton, 47 M.J. 227, 228-29 (C.A.A.F. 1997); United States v. Welch, 25 M.J. 23, 26-27 (C.M.A. 1987); cf. 1 Kenneth S. Broun et al., McCormick on Evidence § 57, at 291 (6th ed. 2006) (discussing judicial approaches to "opening the door" for otherwise inadmissible evidence). The right of confrontation is subject to limitations, including the authority of the court to restrict the scope of cross-examination to avoid problems such as harassment, prejudice, confusion of the issues or repetitive interrogation. Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).

M.R.E. 412 constitutes a rule of exclusion. Banker, 60 M.J. at 221. The defense bears the burden of demonstrating the admissibility of evidence that falls within the category of otherwise excludable evidence under M.R.E. 412. Id. at 222.


## II.  TRIAL PROCEEDINGS

The present appeal focuses on the evidence pertinent to the offenses of rape, unlawful entry, and adultery. Much of the evidence presented at trial involved matters not in dispute. The primary differences at trial involved the circumstances of Appellant's entry into the barracks room of Seaman ARM and the ensuing encounter between Appellant and Seaman ARM.

The granted issue involves two defense motions at trial under M.R.E. 412. The defense offered the first motion prior to

the introduction of evidence.  The defense offered a second motion during the prosecution's case-in-chief at a point where the defense contended that the prosecution had opened the door to the evidence at issue.  The military judge denied both motions.  The Court of Criminal Appeals subsequently ruled that the military judge erred in the disposition of the second motion, but treated the error as harmless.  Savala, 2010 CCA LEXIS 9, at *23-*24, 2010 WL 317687, at *9.

We begin with background information pertinent to the decisions by the military judge and the Court of Criminal Appeals.  Part II.A. sets forth the competing views of the parties as to the facts with respect to the underlying offenses.  Part II.B. summarizes the first defense motion and ruling by the military judge.  Part II.C. summarizes the second defense motion and ruling by the military judge.

### A.  THE COMPETING POSITIONS OF THE PROSECUTION AND THE DEFENSE REGARDING THE CHARGED OFFENSES

1. Events prior to the barracks encounter -- matters not in dispute

On the evening of the incident, Seaman ARM consumed a substantial number of alcoholic beverages at several different locations, including two clubs.  Testimony from multiple witnesses indicated that she was visibly drunk and that her speech was impaired.  Seaman ARM testified that at some point

5

while at the second club, her perception of her surroundings began to get hazy.

Appellant and his friend Seaman Townsel each testified that they observed Seaman ARM in the second club. Appellant testified that he observed Seaman ARM drinking. He had not previously encountered her, and did not speak to her in the club. Seaman Townsel testified that he had met Seaman ARM the previous week, and that he spoke to her briefly in the club on the night in question.

Seaman Townsel testified that at some point during the visit to the second club, Seaman ARM fell onto a table, and her friends assisted her in getting up. Eventually Seaman ARM and several friends left the second club and went to a karaoke bar. Afterwards, they returned to the base. One of those friends testified that she stumbled as she approached the door to her room at about 1:30 a.m., while another friend testified that they returned from the karaoke bar at 4:30 a.m.

Appellant and Seaman Townsel returned to the barracks sometime after 5:00 a.m. As they arrived at the barracks, the two men discussed Seaman ARM. At the end of the discussion, Appellant suggested that they visit her room. The full details of the conversation do not appear on the record. Appellant testified that he was left with the impression that Seaman ARM "might be willing to have sexual intercourse." Seaman Townsel,

6

who knew where Seaman ARM lived, led Appellant to her room.
Seaman Townsel remained in a nearby common area while Appellant
knocked on the door.

2.   Matters in dispute

    a.   The testimony of Seaman Townsel and Seaman ARM
         concerning the events in the room

During the prosecution's case-in-chief, Seaman Townsel
testified that when they approached the room, Appellant
suggested that Seaman Townsel knock on Seaman ARM's door.
Seaman Townsel declined to do so, and sat in a nearby common
area while Appellant knocked on the door.  According to Townsel,
after knocking on the door Appellant remarked that the door was
open.  While the door was open, Townsel observed that the room
was dark.  Townsel came to the door and urged Appellant to leave
with him.  Appellant closed the door, and they both departed.
Townsel testified that they returned to their rooms, and he had
no further knowledge of Appellant's activities that morning.

Seaman ARM testified that she left the second club and had
no memory of returning to her room or getting into bed.  She
next recalled being in her bed, on her back, looking at the
chest of a person raping her.  She did not recognize the person
but could tell that he had tanned or darker skin.  She testified
that after her initial confusion upon waking, she said "no" and
tried to push the person away.  She did not recall what happened

7

at that point.  She testified that she subsequently woke up in the shower with the water running.  After showering, she returned to her bed and then slept until 2:30 p.m. that afternoon.

After awakening in the afternoon, Seaman ARM went to an emergency room, where she received medical treatment.  She did not report the incident as a rape at that time.  On the following day, after speaking with a fellow airman and her mother, she returned to the hospital and reported the incident as a rape.  At that point, she received a full sexual assault and rape test (SART).  She also provided authorities with her bedding and a hat she had found in her room.  Subsequent forensic analysis connected DNA from the bedding to Appellant.  In addition, investigators determined that the door to Seaman ARM's room did not lock properly as a result of a broken locking mechanism.

b.   Appellant's testimony concerning the events in the room

The defense presented the court-martial panel with different evidence regarding the events in the room.  Appellant testified that he knocked and Seaman ARM opened the door.  He introduced himself as a friend of Seaman Townsel, "the guy that she met the previous week at" the club.  According to Appellant, Seaman ARM acknowledged having met Seaman Townsel, but stated

that "she wasn't really interested in him."  After more conversation, she expressed interest in Appellant and noted that he was "cute."  Appellant asked if he could come back and Seaman ARM said yes.  He then left her room, and Appellant and Seaman Townsel then proceeded to their perspective rooms.

Appellant testified that after he "freshened up" in his room, he returned alone to Seaman ARM's room.  After entering the room, Appellant and Seaman ARM engaged in a fifteen- to twenty-minute conversation.  During the conversation Seaman ARM began to touch Appellant's arm and then legs, which eventually led to kissing and sexual intercourse.  According to Appellant, at some point during intercourse Seaman ARM began to act strangely and told Appellant to stop.  After Appellant stopped, Seaman ARM "got up, [and] ran to the bathroom," which was located across the hall from her room.  Appellant dressed himself, and went across the hall towards the bathroom.  He testified that he could hear the shower running, but when he knocked on the door, there was no answer.  Appellant then returned to his own room.

### B.  THE FIRST DEFENSE MOTION UNDER M.R.E. 412

Prior to the presentation of evidence on the merits, defense counsel provided notice under M.R.E. 412(c)(1) that the defense intended to offer evidence at trial subject to M.R.E.

9

412.  Pursuant to M.R.E. 412(c)(2), the military judge conducted a hearing on the motion under Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2006).  During the hearing, defense counsel contended that the evidence proffered in connection with the motion constituted proof of an incident in which Seaman ARM had fabricated an allegation of rape in the aftermath of sexual activity in order to protect her reputation.

The prior incident took place in Virginia Beach a year before the events leading to the charges in the present case. The proffered evidence included a police report of the prior incident, a sworn statement provided by Seaman ARM to the investigators in the present case, and unofficial statements made by the alleged perpetrator in the prior incident.

The police report concerning the prior incident noted that Seaman ARM had been drinking at a private party, and that the last thing she remembered before the alleged incident was leaving the party at 3:30 a.m.  The next thing she remembered was being in her car, half dressed, outside of a gas station, with an open condom in the back seat.  She did not remember having sexual intercourse, but she believed that sex had occurred.  The next day, she reported the event as a sexual assault and provided police with the phone number of a person she identified as having accompanied her when she left the party.  When the police interviewed the suspect, he admitted to

having consensual sexual intercourse with Seaman ARM. He noted that she had been intoxicated and generally flirtatious when he arrived at the party and that she had initiated sexual contact with him while in her car. According to the police report, when the investigators explained the suspect's version to Seaman ARM, "she did not doubt that it could have happened that way, she just does not remember." The case disposition recorded the report of sexual assault from Seaman ARM as "unfounded."

During the investigation of the current case, Seaman ARM made a sworn statement to investigators. In response to a question of whether she had ever been sexually assaulted Seaman ARM stated, "Yes . . . About a year ago . . . . I was sexually assaulted by this guy named P[]." (First ellipsis in original.) She added, "I told my dad that I needed to go to the hospital and my sister took me. The hospital staff called [the] Virginia Beach Police Department. Police responded and I filed a complaint against P[]." When asked whether that case had gone to trial, Seaman ARM stated, "Charges were never filed because they told me it was a 'he said she said' case."

According to the defense proffer, the individual accused of the prior incident believed that Seaman ARM had fabricated the rape charge to divert attention away from the fact that she was found by police, half dressed, in a convenience store parking lot after a night of drinking and drug use.

11

During the Article 39(a) hearing, trial counsel stated that, "The government opposes all mention of this Virginia Beach incident." Counsel argued that the incident was irrelevant to the current case.

Relying on United States v. McElhaney, 54 M.J. 120 (C.A.A.F. 2000), the military judge concluded that the proffered evidence would require litigation of collateral issues and any probative value of the evidence would be outweighed by its prejudicial effect. The military judge ruled that mention of the Virginia Beach incident would not be allowed during the substantive portion of trial, but reserved the issue of whether it would be allowed during any possible sentencing phase.

C. THE SECOND DEFENSE MOTION UNDER M.R.E. 412

During the Government's case-in-chief, the prosecution asked Seaman ARM about her delay in reporting the charged incident as a rape. Seaman ARM replied that she did not "want anybody to know," adding that she "felt really kind of disgusted and [she] just didn't think that people would believe [her]." The prosecution then asked, "Why didn't you think people would believe you." Seaman ARM responded, "Because it had actually happened to me before and it didn't get resolved back in the states."

In a subsequent closed session under Article 39(a), UCMJ, the defense contended that the Government's question to Seaman

ARM about delayed reporting, which she addressed by referring to the prior incident, had opened the door to cross-examination of Seaman ARM about the earlier incident. Defense counsel contended that once the prosecution relied on the prior incident as the explanation for Seaman ARM's delay in reporting the incident as a rape, the defense was "now entitled to challenge that and to challenge the credibility of that reason by exploring the circumstances of the prior false allegation."

In response, the prosecution contended that the examination of Seaman ARM had not opened the door to such evidence, and that, in any case the probative value of the evidence was outweighed by the danger of unfair prejudice. The military judge then ruled against the defense, stating:

> Your request to go into it is denied.
>
> The military judge determines on the basis of the hearing, the previous hearing and during the course today, that the evidence that the accused seeks to offer is not relevant for the purpose of this session and that the probative value of such evidence outweighs [sic] the danger of unfair prejudice to the alleged victim's privacy.
>
> And, further, specifically for the purpose in which it arose has nothing to do with 412. There is no relevancy of alleged victim's sexual behavior, sexual predisposition, which is prohibited under 412.
>
> And, finally, the evidence, the exclusion of which does not violate any constitutional rights of the accused to cross-examine those matters when you weigh the balancing test of all the evidence together.

The defense counsel inquired as to the scope of the military judge's ruling, asking, "So I can't challenge the fact that she is already educated on how to falsify a presentation in a sexual assault examination, for example, based on prior experience?"  The military judge responded, "That's correct."  In a further inquiry, defense counsel asked whether the military judge's ruling meant that he could not "challenge her credibility based on the facts and circumstances and lies that she made the first time?"  The inquiry led to the following colloquy between the military judge and defense counsel:

> MJ:  Let me back up and just say I don't get to explain my rulings, counselor.  I ruled, so -- and I don't get to explain and tell you how to try your case.
>
> Anything else?
>
> CC:  Sir, I do that because I want to be careful that I'm doing things correctly.
>
> MJ:  You understand that you cannot get into any sexual -- you cannot get into any matters under 412.

During the ensuing cross-examination of Seaman ARM, defense asked various questions probing Seaman ARM's motive and propensity to lie, including making false statements on various government forms.  Pursuant to the ruling by the military judge under M.R.E. 412, defense counsel did not ask any questions regarding the earlier incident involving Seaman ARM's prior allegation of sexual assault.

14

III.  REVIEW IN THE COURT OF CRIMINAL APPEALS

On appeal, the Court of Criminal Appeals discussed the two defense motions under M.R.E. 412.  The court concluded that the military judge erred in denying the second motion, irrespective of the merits of the first motion, because "the evidence should have been admitted when the Government opened the door to the evidence at trial."  2010 CCA LEXIS 9, at *14, 2010 WL 317687, at *5.

After finding error, the court determined that the error was harmless beyond a reasonable doubt, citing the "overwhelming evidence of the appellant's guilt."  Id. at *17, 2010 WL 317687, at *7.  The court noted that "the testimony of an alleged victim is often the critical component of a successful prosecution for rape," but concluded that the present case required a different view.  Id. at *18, 2010 WL 317687, at *7.  The court focused on the testimony of Appellant's friend, Seaman Townsel, "who directly contradicted the appellant's already implausible version of the events," particularly with respect to Appellant's description of his initial encounter at the door to Seaman ARM's room.  Id.  In addition, the court stated that "the presence of DNA evidence, the testimony of the victim's companion's that night, and the testimony of the appellant himself leave no room to doubt that the appellant committed this crime."  Id.  The court also placed "great weight" on the fact that Appellant, by

his own admission, had not met Seaman ARM prior to knocking on her door at 5:00 a.m. and "engaging in sexual intercourse with her shortly thereafter."  Id. at *18-*19, 2010 WL 317687, at *7.

Viewing Appellant's version of the events as "highly implausible," and as contradicted in important detail by Seaman Townsel, the court concluded that further opportunity to cross-examine Seaman ARM about her prior allegation of sexual assault "would not have altered the outcome of the trial," applying a harmless beyond a reasonable doubt standard.  Id. at *21-*23, 2010 WL 317687, at *8-*9.  In that regard, the court noted that the defense had the opportunity on cross-examination to inquire into the fact that she was engaged, that she abused alcohol, that she had promised her fiancé that she would stop drinking, that she had broken this promise on the night of the incident, and that she had been untruthful in filling out her security clearance form.  Id. at *23, 2010 WL 317687, at *9.  The court also addressed the credibility of Seaman Townsel, noting that "he initially lied to the police and was himself a suspect." Id.  The court discounted these considerations, stating that "we believe that he had no real reason to lie at trial.  Any maladies in the version of events he presented to the police were fully resolved prior to tr[ia]l.  We find his testimony, and not that of the appellant, to be credible."  Id.

16

IV.  DISCUSSION

In the present appeal, Appellant contends that the court below erred in its prejudice analysis.  The Government contends that the military judge did not err in his M.R.E. 412 rulings; that the court below incorrectly found error; and that if there was error, the court below correctly concluded that any error was harmless beyond a reasonable doubt.

At the outset, we note that the Government has not appealed the conclusion of the court below that the military judge erred in denying the second defense motion under M.R.E. 412.  "When a party does not appeal a ruling, the ruling of the lower court normally becomes the law of the case."  United States v. Parker, 62 M.J. 459, 464 (C.A.A.F. 2006).  The law-of-the-case doctrine involves the exercise of appellate discretion rather than binding legal doctrine.  See id.  As this court has previously noted:

> [T]he law-of-the-case doctrine does not preclude this Court from examining the legal ruling of a subordinate court in a case where the Judge Advocate General has not certified the issue.  However, we are reluctant to exercise this power and, as a rule, reserve it for those cases where the lower court's decision is clearly erroneous and would work a manifest injustice if the parties were bound by it.

United States v. Doss, 57 M.J. 182, 185 (C.A.A.F. 2002) (citations and quotation marks omitted).

17

The Government has not established in the present appeal that "the lower court's decision is clearly erroneous and would work a manifest injustice." Id. (citations and quotation marks omitted). The lower court relied on the record of trial to demonstrate that the prosecution introduced into evidence Seaman ARM's prior allegation of sexual assault. Savala, 2010 CCA LEXIS 9, at *12-*13, 2010 WL 317687, at *5. The lower court further relied on the record of trial to demonstrate that such evidence bolstered Seaman ARM's credibility with respect to the reasons for her delayed reporting, thereby benefiting the prosecution. Id. at *13-*16, 2010 WL 317687, at *6. Under these circumstances, the lower court did not clearly err in concluding that the prosecution opened the door to cross-examination of Seaman ARM with respect to the prior incident. Therefore, we shall proceed to address the granted issue, which raises the question of whether the ruling by the military judge constituted prejudicial error.

"We review the prejudicial effect of an erroneous evidentiary ruling de novo." United States v. Toohey, 63 M.J. 353, 358 (C.A.A.F. 2006). "For constitutional errors, the Government must persuade us that the error was harmless beyond a reasonable doubt." United States v. Hall, 56 M.J. 432, 436 (C.A.A.F. 2002). In this case the constitutional error was a violation of the Confrontation Clause. As the Supreme Court

noted while assessing the potential prejudicial impact of a Confrontation Clause violation, "[w]hether such an error is harmless in a particular case depends upon a host of factors." Van Arsdall, 475 U.S. at 684. The Court, in Van Arsdall, identified five potential factors, without limiting a reviewing court in the identification and application of factors in a particular case. Id. (noting that factors could include, the importance of the witness's testimony to the government's case, whether the testimony was cumulative, the presence of contradictory or corroborating evidence, the extent of other cross-examination allowed, and the strength of the government case). This Court has applied a four-part test in assessing prejudice in the event of an evidentiary error, balancing (1) the strength of the government's case; (2) the strength of the defense case; (3) the materiality of the excluded evidence; and (4) the quality of the evidence in question. See, e.g., United States v. Weeks, 20 M.J. 22, 25 (C.M.A. 1985); Hall, 56 M.J. at 437; Toohey, 63 M.J. at 358. Regardless of factors employed, the balancing test involves consideration of whether, "assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." Van Arsdall, 475 U.S. at 684.

In the present case, the Government contends that its case against Appellant was strong and that the Seaman ARM's testimony comprised only a small part of the evidence which led to the conviction. The Government, like the court below, relies on physical evidence, such as the presence of Appellant's DNA in the room and the malfunctioning lock on the door to Seaman ARM's room to support the Government's theory that Appellant unlawfully entered the room and sexually assaulted Seaman ARM. The Government relies on the lower court's view that Seaman Townsel's testimony, which contradicts Appellant's testimony about the onset of his entry in Seaman ARM's room, provided critical evidence upon which the panel could have convicted in this case. 2010 CCA LEXIS 9, at *23, 2010 WL 317687, at *9.

Although the prosecution presented a strong circumstantial case at trial, the defense identified significant facts for consideration by the court-martial panel on the question of whether the Government proved its case beyond a reasonable doubt. Seaman ARM and Appellant were the only individuals present at the time of intercourse. Her testimony was the Government's only direct evidence on the disputed issue of consent. Seaman Townsel, the critical witness in the lower court's analysis, was not present when Appellant was inside the room with Seaman ARM, and he had no knowledge of what transpired between Appellant and Seaman ARM at the time of the charged

acts. Moreover, the credibility of Seaman Townsel was placed at issue by the fact that he had been an initial suspect, and by the fact that he had misled law enforcement officials during the initial investigation and subsequently changed his version of the events. The question of delayed reporting by Seaman ARM, and the impact on her credibility, was placed at issue by the prosecution when the trial counsel interjected the issue of her prior sexual assault allegation against another individual. The prosecution's physical evidence did not reflect any indication of trauma.

Appellant, in his testimony, described the events of the evening and his early morning encounter with Seaman ARM. Although the circumstances may have been out of the ordinary, the events he described were not so unusual as to warrant the lower court's dismissal of his testimony as being "highly implausible" -- a characterization that led the court below to treat Appellant's version of the events as not worthy of consideration by the court-martial panel.

The balance of factors on the question of prejudice requires consideration not only of the strength of the prosecution's case, but the potential vulnerabilities on the issue of reasonable doubt. The vulnerabilities included the prosecution's reliance on the testimony of Seaman Townsel, a witness who had misled investigators about the underlying

events, and who did not observe the sexual encounter at issue; the hazy memory of Seaman ARM, impacted by her excessive consumption of alcohol; and the issues concerning the credibility of Seaman ARM, including her motive to lie and her past deception in dealing with official records, and her delayed reporting of the alleged rape. The Government's circumstantial evidence could not negate these vulnerabilities, including the fact that Seaman ARM and Appellant provided conflicting testimony about what happened at the critical time when they were the only two people present. Under the circumstances, assessment of credibility was a critical issue in the case. The strength of the Government's circumstantial case in other respects does not overcome these considerations.

The responsibility at trial for determining whether to believe the version of events provided by the prosecution or the defense rested with the panel members, and the ruling by the military judge enabled the prosecution to enhance the credibility of its version while handcuffing the defense. Issues of witness credibility and motive are matters for the members to decide. United States v. Moss, 63 M.J. 233, 239 (C.A.A.F. 2006). When assessing prejudice, we assume that the "damaging potential of the cross-examination were fully realized." Van Arsdall, 475 U.S. at 684. In that light, we assume, without reaching a conclusion on the merits of the

22

charges at issue, that Appellant's cross-examination could have convinced the panel that the prior allegation was false. If the members believed that Seaman ARM had made a prior false allegation of rape it "may have tipped the credibility balance in Appellant's favor." Moss, 63 M.J. 239. Under these circumstances, the decision of the military judge to permit use of the past event by the prosecution to enhance her credibility, while denying the defense an opportunity to explore the impact of that event on her credibility, constituted prejudicial error.

## V. CONCLUSION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals as it concerns the convictions of rape, unlawful entry, and adultery is reversed, and a rehearing is authorized.

United States v. Savala, No. 10-0317/NA

STUCKY, Judge, with whom BAKER, Judge, joins (dissenting):

I disagree with the majority's application of the law of the case doctrine in this case. I further do not believe that the alleged error was prejudicial. Therefore, I respectfully dissent.

I.

The United States Navy-Marine Corps Court of Criminal Appeals (CCA) concluded that the military judge erred by barring Appellant from cross-examining the prosecutrix, Seaman ARM. United States v. Savala, No. 200800818, 2010 CCA LEXIS 9, 2010 WL 317687 (N-M. Ct. Crim. App. Jan. 28, 2010) (unpublished). Nevertheless, the CCA held that the error was harmless beyond a reasonable doubt and affirmed Appellant's conviction for rape. 2010 LEXIS 9, at *17-*18, 2010 WL 317687, at *6-*7. The Government did not appeal the CCA's finding of error but asserted as much in its reply to Appellant's appeal. The majority applies the law of the case doctrine to bar consideration of this issue. United States v. Savala, __ M.J. __ (17–18) (C.A.A.F. 2011).

The law of the case doctrine holds "that a decision rendered in a former appeal of a case is binding in a later appeal." Black's Law Dictionary 966 (9th ed. 2009). The Supreme Court has made clear that just as the prevailing party

at trial may assert on appeal any ground in support of a judgment,

> whether or not that ground was relied upon or even considered by the trial court[,] . . . . [it] is likewise settled that the appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it.

Dandridge v. Williams, 397 U.S. 471, 475 n.6 (1970) (quotation marks and citations omitted); accord Schiro v. Farley, 510 U.S. 222, 228-29 (1994) ("recogniz[ing] that the State, as respondent, is entitled to rely on any legal argument in support of the judgment below").

This interpretation of the law of the case doctrine is logical.  It makes no sense to expect a party that prevails in a lower court to appeal the judgment of that court.  Such a requirement would waste valuable attorney and judicial resources.  While I agree with the majority that the door was opened to cross-examination of Seaman ARM, I would hold that the Government was not barred by the law of the case doctrine from contesting the issue.

II.

The majority holds that the military judge's error in prohibiting cross-examination of Seaman ARM on her previous

2

allegation of rape was not harmless beyond a reasonable doubt. I disagree.

"[T]he Constitution entitles a criminal defendant to a fair trial, not a perfect one." Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986). Constitutional errors involving the denial of an accused's opportunity to impeach a witness will result in reversal unless the error was harmless beyond a reasonable doubt. "The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." Id. at 684. In determining whether an error was harmless beyond a reasonable doubt, we consider

> a host of factors . . . . includ[ing] the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

Id. In applying these factors, the Court's overarching goal is to determine "whether there is a reasonable possibility that the evidence [or error] complained of might have contributed to the conviction." United States v. Moran, 65 M.J. 178, 187 (C.A.A.F. 2007) (brackets in original) (quotation marks and citation omitted).

### III.

In this case, there was considerable testimony that Seaman ARM was drinking and became heavily intoxicated. The evidence also showed that Appellant and his friend, Seaman Townsel, went to one of the same bars as Seaman ARM. Seaman Townsel spoke with Seaman ARM for a few moments at the bar because they had met the previous week. Appellant and Seaman ARM, conversely, had never met and did not meet each other at the bar.

At approximately 4:30 A.M., Seaman ARM left a karaoke bar to return to her barracks room. After leaving the bar, Appellant convinced Seaman Townsel that they should go to Seaman ARM's room so that Seaman Townsel could speak with her. When they arrived at Seaman ARM's room, Appellant knocked on the door, which was open. Seaman Townsel convinced Appellant to leave because the room was dark and no one was answering the door. The next morning Seaman ARM filed a report claiming she had been raped the previous night by an unknown assailant. Appellant readily admitted that he had sex with Seaman ARM, but he contended that it was consensual. Seaman ARM testified that it was not.

### IV.

Seaman ARM's testimony was important because she and Appellant were the only witnesses to the sexual acts. Seaman ARM admitted she was intoxicated and awoke to someone having sex

4

with her whom she could not identify.  Indeed the majority relies on the victim's "hazy memory" and "excessive consumption of alcohol" to suggest that her testimony was unreliable, which also tends to diminish the importance of her testimony.  Furthermore, Appellant impeached Seaman ARM's credibility by pointing out that she had lied on military forms and had broken a no-alcohol pact with her fiancé.  Other than limiting questions about the previous rape allegation, the military judge permitted Appellant full and free cross-examination of Seaman ARM.

The evidence also corroborated some of Seaman ARM's testimony.  She testified that she did not know Appellant, had not invited him into her room, and had not consented to have sex with him.  In accord with Seaman ARM's testimony, Seaman Townsel and Appellant both testified that Appellant had never met nor spoken with Seaman ARM before the night of the events.  As discussed below, Seaman Townsel also disputed Appellant's unsupported description of meeting Seaman ARM at her room.

The evidence further established that Appellant wanted to contact Seaman ARM after leaving the bar, that he learned the location of her room from Seaman Townsel, and that he knew her door was not latched because it opened when he knocked on it.  A Naval Criminal Investigative Service agent later confirmed the fact that Seaman ARM's door would not properly latch.

5

Furthermore, evidence, including expert testimony, indicated the likelihood that Seaman ARM was still heavily intoxicated at the time of the incident, which would explain her failure to respond to a knock at the door or an unauthorized entrance into her barracks room.  The Government was thus able to provide a convincing explanation for how Appellant gained access to Seaman ARM's room.

As the majority recognizes, "the prosecution presented a strong circumstantial case at trial."  United States v. Savala, __ M.J. __ (20).  Although the strength of the case may depend on whether the evidence is circumstantial or direct, a strong case is a strong case regardless of the nature of the evidence. Indeed, trial counsel provided a coherent and convincing picture of Appellant's criminal actions.

The strength of the Government's case becomes more apparent when contrasted with the weakness of Appellant's case. According to Appellant's testimony, he knocked on Seaman ARM's door at some time after five in the morning with Seaman Townsel nearby.  Despite being quite intoxicated, Seaman ARM supposedly came to the door, met Appellant for the first time, and told him that although she was not interested in Seaman Townsel, whom Appellant was attempting to speak highly of, she thought "[Appellant] was cute" and wondered why "[he] wouldn't talk to her."  According to Appellant, he and Seaman ARM agreed he would

return after he went back to his room to freshen up.  When he returned, the two had a short conversation, which, according to Appellant, resulted in consensual sex.

Regardless of the plausibility of the story standing alone, Appellant's defense is weak because it is both (1) unsupported by the evidence and, more importantly, (2) contradicted by testimony from his friend Seaman Townsel, who testified that they did not see Seaman ARM at her room and Appellant never spoke with Seaman ARM in his presence.  It is uncontradicted that Seaman Townsel was present and in a location where he would have heard any conversation had one occurred.

It is Seaman Townsel's testimony that is critical in assessing prejudice, as his testimony was the most damaging to Appellant's case.  In finding prejudicial error, the majority relies on the fact that Seaman Townsel's credibility had been called into question at trial based on his initial statements to investigators concerning the incident:  He claimed he saw an unidentified person enter Seaman ARM's room.  Certainly the fact that he changed his story is relevant to Seaman Townsel's credibility.  But it might also be indicative of someone seeking to deflect attention from himself or a friend.  The members had an opportunity to observe Seaman Townsel and consider his testimony in light of all the other evidence before the court,

including the fact that Appellant admitted having sex with Seaman ARM.

Finally, cross-examination on the prior Virginia Beach incident would not have bolstered Appellant's attack on Seaman ARM's credibility.  In that incident, Seaman ARM awoke from a night of partying and could not remember what happened.  The circumstances suggested that someone had sexual intercourse with her.  She reported the incident as a rape.  When confronted with the alleged perpetrator's version of events that it was consensual, Seaman ARM admitted that the alleged perpetrator's version might be true, but she could not remember.  That is not a false statement.  Without something more in the record, I fail to see how the majority can conclude that the members could have found anything false about the prior allegation.  Under the circumstances, evidence of the previous allegation would, if anything, have bolstered her credibility with the court members: When confronted with the evidence, she was able to evaluate the facts and conclude that she may have been wrong in her assessment of the situation.  The excluded evidence would not have "tipped the credibility balance in Appellant's favor." United States v. Moss, 63 M.J. 233, 239 (C.A.A.F. 2006).

Regardless of whether the military judge erred in not permitting Appellant to cross-examine Seaman ARM about her previous rape allegation, such evidence would not have bolstered

his anemic defense. I am confident that even if "the damaging potential of the cross-examination were fully realized," it would not have affected Appellant's conviction, and, therefore, it was harmless beyond a reasonable doubt. See Van Arsdall, 475 at 684.

V.

I would affirm the judgment of the United States Navy-Marine Corps Court of Criminal Appeals.

9