*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
KISOR, GANNON, and FLINTOFT
Appellate Military Judges

_____

**UNITED STATES**

*Appellee*

**v.**

**Anthony M. CLARK**

Hospital Corpsman Petty Officer First Class (E-6), U.S. Navy

*Appellant*

**No. 202400217**

_____

Decided: 30 December 2025

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Ryan Stormer (arraignment)
Andrea K. Lockhart (trial)

Sentence adjudged 9 July 2022 by a special court-martial tried at Naval Base San Diego, California consisting of officer and enlisted members. Sentence in the Entry of Judgment: a reprimand, reduction to E-1, forfeiture of $1,200.00 pay per month for 12 months.

For Appellant:

*Lieutenant Raymond E. Bilter, JAGC, USN*

For Appellee:

*Major Mary Claire Finnen, USMC*
*Commander John T. Cole, JAGC, USN*

Judge FLINTOFT delivered the opinion of the Court, in which SENIOR Judge KISOR and Judge GANNON joined.

───────────────────

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

───────────────────

FLINTOFT, Judge:

Contrary to his pleas, a panel of members convicted Appellant of eight specifications of wrongful use of a controlled substance and three specifications of larceny in violation of Uniform Code of Military Justice (UCMJ) Articles 112a and 121.[1]

Appellant asserts three assignments of error (AOEs):

I. Did the Government violate the Confrontation Clause when it admitted evidence based on the testimony of the Government's surrogate drug lab expert;[2]

II. Did the military judge abuse her discretion when she admitted, over defense objection, urinalysis documents pursuant to Military Rule of Evidence (Mil. R. Evid.) 803(6);[3] and

III. Did the military judge violate Appellant's constitutional right to a unanimous members panel guilty verdict.[4]

───────────────────

[1] 10 U.S.C. §§ 912a, 921.

[2] Appellant's requested relief under this AOE is to set aside the findings in Specifications 1 through 6 of Charge I and the sentence.

[3] Appellant's requested relief under this AOE is to set aside the findings in Specifications 1 and 2 of Charge I and the sentence.

[4] Appellant's requested relief under this AOE is to set aside all findings and the sentence. He raises this AOE pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). This AOE is without merit. *See United States v. Anderson*, 83 M.J. 291 (C.A.A.F. 2023); *See also United States v. Matias*, 25 M.J. 356 (C.M.A. 1987).

Finding no prejudicial error, we affirm.

## I. BACKGROUND

Appellant's convictions for the wrongful use of methamphetamine and tetrahydrocannabinol (THC) stemmed from five separate urinalysis tests while he was assigned to Navy Medicine Readiness and Training Command (NMRTC) San Diego.[5]

At trial, the Government presented the testimony of Ms. Bravo to establish the foundation for Prosecution Exhibits 8 and 11, the testing registers for two of Appellant's urinalyses.[6] Ms. Bravo served as one of the assistant urinalysis program coordinators (AUPC) at NMRTC San Diego from October 2020 through January 2022. At that time, she was an active duty Second Class Petty Officer; however, she separated from the Navy in April 2022. At the time of her testimony in June 2022, Ms. Bravo had not performed duties as AUPC or as records custodian since January 2022.[7]

During trial, Ms. Bravo testified that Prosecution Exhibit 11 was created on 3 January 2020 prior to her assuming duties as an AUPC, while Prosecution Exhibit 8 was created on 3 February 2021 during her tenure as an AUPC. She explained that, as an AUPC, she was responsible for maintaining and storing the command's urinalysis records, including testing registers and chain of custody documents, which were kept and prepared in the regular course of business of the command's urinalysis program pursuant to applicable urinalysis policies.[8] She stated that testing registers are computer generated and are created and filled out on the day of testing. Additionally, she testified that that records for the current and previous month's tests were kept in a locked drawer within the urinalysis office.[9]

Regarding Prosecution Exhibits 8 and 11, Ms. Bravo testified that both would have been maintained and kept within the command's record-keeping system at the time of trial. She acknowledged that both records would have

---

[5] Appellant was also found guilty of three specifications of Article 121, UCMJ.

[6] Through Ms. Bravo's testimony, the Government also admitted Prosecution Exhibits 6, 9 and 10. These exhibits were the testing registers associated with the three other urinalysis tests in which Appellant's urine tested positive.

[7] Ms. Bravo was classified as another qualified witness pursuant to Mil. R. Evid. 803(6)(D) since she was no longer in the Navy or serving as the AUPC or records custodian.

[8] R. at 768-71.

[9] R. at 770.

been maintained during her tenure as AUPC.[10] She identified specific information contained on both exhibits, including command personnel, the date of the urinalysis, and the command's name at the top of both exhibits. Since both exhibits belonged to the command, were not dated for the current or previous month, and were less than three years old, she testified the exhibits would have been kept in the binder, organized by month and year, and located in the urinalysis office.[11]

The Government also called Dr. Foxtrot, a chemist employed at the Naval Drug Screening Laboratory (NDSL), who was recognized as an expert in the field of forensic chemistry without objection. Specifically, when the military judge asked Defense if they had any objection to Dr. Foxtrot being recognized as an expert, they responded, "[n]o, Your Honor."[12] Through Dr. Foxtrot's testimony, the Government established the necessary foundation and authenticated, as business records, all five drug laboratory reports associated with Appellant's positive drug test results.[13] These five reports were identified as Prosecution Exhibits 23 through 27. Each exhibit was prepared by the NDSL's documentation services department, which retrieves the drug laboratory reports and provides them to the designated expert witness for comparison and verification, ensuring they are exact copies.[14]

The Government first sought to admit Prosecution Exhibit 27 into evidence. However, trial defense counsel objected to the admission of the two-page cover memorandum, arguing it constituted testimonial hearsay. The military judge sustained this objection and the cover memorandum was not admitted into evidence or published to the members. Similarly, the cover memoranda included in Prosecution Exhibits 23 through 26 were also removed and not presented to the members.[15] The remainder of Prosecution Exhibits 23 through 27, consisting primarily of chain of custody documents and computer-generated testing

---

[10] R. at 773; R. at 781-82; R. at 784-85; R. at 792.

[11] R. at 770; R. at 782; R. at 784.

[12] R. at 924.

[13] The urine samples in Pros. Ex. 23 and 24 were positive for methamphetamine while the urine samples in Pros. Ex. 25 through 27 were positive for both methamphetamine and THC.

[14] R. at 964-65.

[15] Despite this, a redacted cover memorandum is included with each relevant prosecution exhibit in the Record of Trial.

results, were admitted into evidence after trial defense counsel did not object after being provided with the opportunity to do so by the military judge.[16]

Dr. Foxtrot then reviewed each exhibit and testified regarding the laboratory procedures and testing processes associated with each urine sample. He testified to the chain of custody and how the urine samples linked to each report belonged to Appellant. After reviewing the reports, Dr. Foxtrot concluded that all five of the urine samples provided by Appellant exceeded Department of Defense cutoff concentrations and tested positive for either methamphetamine or both methamphetamine and THC.

While Dr. Foxtrot stated he was not directly involved in testing the urine samples, he was listed on one of the chain of custody documents in Prosecution Exhibit 27, which Appellant does not include in his assigned error. We therefore focus only on Prosecution Exhibits 23 through 26 in this opinion.

## II. Discussion

**A. The Government Did Not Violate the Confrontation Clause When it Admitted Evidence Based on the Testimony of Dr. Foxtrot.**

### 1. Standard of Review

Waiver is an intentional relinquishment or abandonment of a known right.[17] Whether waiver has occurred is a question of law this court reviews de novo.[18] CAAF has stated, a valid "waiver leaves no error . . . to correct on appeal."[19] On the other hand, forfeiture is the failure to timely assert a right.[20] This Court reviews forfeited issues under a plain error standard.[21] Plain error is a clear or obvious error that results in material prejudice to a substantial

---

[16] Trial defense counsel also objected to pages three and four of Prosecution Exhibit 27 as cumulative with Prosecution Exhibit 16 for identification; however, the military judge overruled the objection since Prosecution Exhibit 16 had not yet been admitted into evidence.

[17] *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020) (quoting *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009)).

[18] *Id.*

[19] *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009).

[20] *Davis*, 79 M.J. at 331.

[21] *Johnson v. United States*, 520 U.S. 461, 466-67 (1997).

right.[22] By its nature, the Confrontation Clause of the Sixth Amendment implicates a substantial right, and where plain and obvious error implicates a constitutional right, the Government bears the burden to show that it was harmless beyond a reasonable doubt.[23] In a urinalysis case, stamps, signatures, and other notations on the chain of custody documents and data review sheets, and results report summaries, are not plainly and obviously testimonial in the context of review for plain error.[24]

An appellant receives the benefit of a change to the law that occurs between his trial and the time of his appeal.[25] This court-martial adjourned in July 2022. Almost two years later, in June 2024, the Supreme Court of the United States decided *Smith v. Arizona.*[26] In *Smith,* the Supreme Court held that "[a] state may not introduce the testimonial out-of-court statements of a forensic analyst at trial, unless she is unavailable and the defendant has had a prior chance to cross-examine her."[27] The Supreme Court also held that the state may not

> introduce those statements through a surrogate analyst who did not participate in their creation. And nothing changes if the surrogate . . . presents the out-of-court statements as the basis for his expert opinion. Those statements, as we have explained, come into evidence for their truth–because only if true can they provide a reason to credit the substitute expert. So a defendant has the right to cross-examine the person who made them.[28]

*2. Analysis*

a. Any Objection to Testimonial Hearsay in the Documents in Violation of *Crawford v. Washington* was Waived

Appellant contends the admission of Prosecution Exhibits 23 through 26, based solely on the foundational testimony of a surrogate expert who did not

---

[22] *United States v. Dillenburger*, 85 M.J. 599, 608 (N-M. Ct. Crim. App. 2025) *rev. denied*, __M.J.__, No. 25-0174/NA, 2025 CAAF LEXIS 561 (C.A.A.F. July 17, 2025) (citing *United States v. McPherson*, 81, M.J. 372, 377 (C.A.A.F. 2021)).

[23] *Id.* (citing *United States v. Harcrow*, 66 M.J. 154, 160 (C.A.A.F. 2008)).

[24] *Id.* (citing *United States v. Sweeney*, 70 M.J. 296, 305 (C.A.A.F. 2011)).

[25] *United States v. Tovarchaves,* 78 M.J. 458, 462 (C.A.A.F. 2019) (*citing Griffith v. Kentucky*, 479 U.S. 314, 328 (1987)); *See United States v. Mullins*, 69 M.J. 113, 116-17 (C.A.A.F. 2010).

[26] 602 U.S. 779 (2024).

[27] *Id.* at 802-03.

[28] *Id.* at 803 (citations omitted).

perform any of the testing in the reports, violated his rights under the Confrontation Clause in light of the Supreme Court's decision in *Smith v. Arizona.*[29] We disagree.

In March 2025, this Court issued a published opinion, *United States v. Dillenburger*, the facts of which are remarkably similar to those in Appellant's case. As in *Dillenburger*, the Government in this case presented the testimony of an expert from the NDSL who was not involved in the testing of Appellant's urine samples. During trial, Dr. Foxtrot was recognized as an expert without objection, and he authenticated Prosecution Exhibits 23 through 26, four of the five drug laboratory reports associated with Appellant's positive urine samples, as business records.

In contrast to the documentary exhibits in *Dillenburger*, however, the first two pages of each exhibit in this case included a cover memorandum signed by someone other than Dr. Foxtrot. Trial defense counsel objected to the cover memorandum that accompanied each exhibit as testimonial hearsay. The military judge sustained the objection and admitted the remainder of each exhibit without objection.[30]

Despite *Crawford v. Washington*[31] and *United States v. Tearman*[32], Appellant waived any C*rawford* violation under the Confrontation Clause for any testimonial hearsay contained in the drug laboratory reports when trial defense counsel declined to make an objection after being asked by the military judge.[33] Thus, any testimonial hearsay objections that may have been present when Prosecution Exhibits 23 through 26 were admitted were waived.

### b. Dr. Foxtrot's Testimony Was Not Testimonial Hearsay

Next, we examine whether Dr. Foxtrot's foundational testimony violated the Confrontation Clause in light of *Smith v. Arizona*. Since *Smith* had not been decided at the time of Appellant's trial, defense counsel's failure to object to this testimony does not constitute waiver, but is instead treated as a forfeiture, which we review under a plain error standard.[34]

In *Smith*, the Supreme Court acknowledged that a surrogate expert from the same drug laboratory who did not perform the testing may still testify

---

[29] Appellant's Brief at 8.

[30] *But see* fn15.

[31] 541 U.S. 36 (2004).

[32] 72 M.J. 54 (C.A.A.F. 2013).

[33] *See generally Dillenburger*, 85 M.J. at 609.

[34] *See Harcrow,* 66 M.J. at 158.

based on personal knowledge about how the drug laboratory functions and its standards, practices, and procedures used to conduct tests.[35] Appellant, however, seems to argue that *Smith* limits an expert's ability to do just that.

In this case, Dr. Foxtrot testified regarding the NDSL's internal controls, standards, practices, and procedures applicable to the testing of Appellant's urine samples, specifically relating to Prosecution Exhibits 23 through 26. He also testified about the chain of custody and confirmed that Appellant's urine samples associated with these exhibits were properly linked to the tests conducted. After independently reviewing each exhibit generally and the computer-generated data specifically, he concluded that Appellant's urine tested positive for methamphetamine or a combination of methamphetamine and THC.[36]

Additionally, to the extent Appellant argues that the holding in *Smith* also overturns a well-established line of precedent from our superior court that followed *Crawford* regarding what constitutes testimonial hearsay in forensic laboratory reports, this Court finds those arguments unconvincing. The holding in *Smith* did not address whether the underlying statements were testimonial.[37] Our superior court has held, "[i]t is well-settled that under both the Confrontation Clause and the rules of evidence, machine-generated data and printouts are not statements and thus not hearsay—machines are not declarants—and such data is therefore not 'testimonial.'"[38] Additionally, as this Court articulated in *Dillenburger*, in a urinalysis case, stamps, signatures, and other notations on the chain of custody documents and data review sheets, and results report summaries were not testimonial, and, therefore, it is not plain

---

[35] *See Smith,* 602 U.S. at 799 ("The [Confrontation] Clause still allows forensic experts . . . to play a useful role in criminal trials. Because [the surrogate expert] worked in the same lab . . . he could testify from personal knowledge about how that lab typically functioned—the standards, practices, and procedures it used to test seized substances, as well as the way it maintained chains of custody. . . . Or had [the surrogate expert] not been familiar with . . . [the] lab, he could have testified in general terms about forensic guidelines and techniques—perhaps explaining what it means for a lab to be accredited and what requirements accreditation imposes.") (citations omitted).

[36] R. at 993-1001. There is no indication in the record that Dr. Foxtrot relied on the cover memoranda to form the basis of his independent conclusions. Absent from the cross-examination were questions that may have shed light on this question including: (1) What did you do to prepare for your testimony today? (2) What documents did you review? Just as this Court refused to do in *Dillenburger*, we will not speculate further on this issue.

[37] *See Smith,* 602 U.S. at 803.

[38] *United States v. Blazier*, 69 M.J. 218, 224 (C.A.A.F. 2010).

error.[39] Although Appellant disputes this aspect of *Dillenburger*, which constitutes binding precedent, the Court finds Appellant's argument to be without merit.[40]

c. Any Error Here Was Harmless Beyond a Reasonable Doubt.

To the extent that any other portions of Dr. Foxtrot's testimony may have conveyed testimonial hearsay from the exhibits, any such error was not plain or obvious and did not materially prejudice a substantial right, and, regardless, would have been harmless beyond a reasonable doubt.[41]

In the context of erroneous admission of testimonial hearsay, this Court focuses on whether there is a reasonable possibility that the evidence might have contributed to the conviction.[42] In other words, this Court must be convinced that the testimonial hearsay was unimportant in light of the other evidence.[43] To resolve this question, the CAAF adopted a balancing test considering factors such as: (1) the importance of the unconfronted testimony in the prosecution's case; (2) whether the evidence was cumulative; (3) the existence of corroborating evidence; (4) the extent of confrontation permitted; and (5) the strength of the prosecution's case.[44] We consider the "entire record" which includes evidence presented by the Defense.[45]

As this Court reasoned in *Dillenburger,* the admission into evidence of Prosecution Exhibits 23 through 26 without objection heavily tilts the balance of these factors in favor of the Government.[46] Additionally, Dr. Foxtrot's testimony describing the laboratory's testing processes and procedures was not hearsay, and his testimony regarding the testing and chain of custody would have been largely cumulative with the exhibits already admitted without objection. Furthermore, the Government's case was overwhelmingly strong, and any potential significance of un-confronted testimony would be low, especially

---

[39] *Dillenberger,* 85 M.J. at 608 (citing *Sweeney*, 70 M.J. at 305).

[40] *See Matias*, 25 M.J. 356.

[41] We review this question de novo. *United States v. Savala*, 70 M.J. 70 (C.A.A.F. 2011) (citations omitted). Stamps, signatures, and other notations on the chain of custody documents and data review sheets, and results reports summaries, are not plainly and obviously testimonial in the context of review for plain error. *See Sweeney*, 70 M.J. at 305.

[42] *See Tearman*, 72 M.J. at 62 (citations and internal quotation marks omitted).

[43] *Id.* (*citing United States v. Gardinier*, 67 M.J. 304, 306 (C.A.A.F. 2009)).

[44] *Id.* (citing *Sweeney*, 70 M.J. at 306).

[45] *See id.*

[46] *See Dillenburger*, 85 M.J. at 610.

it was corroborated by other witnesses and the drug laboratory reports themselves. As also highlighted by the Government, Appellant was not limited in his cross-examination of Dr. Foxtrot; consequently, even if some portion(s) of his testimony were unconfronted testimonial hearsay, the Government has met its burden to show that it or they would be harmless beyond a reasonable doubt.

**B. The Military Judge Did Not Abuse Her Discretion When She Admitted Urinalysis Documents Pursuant to Mil. R. Evid. 803(6).**

*1. Standard of Review*

Appellate courts review a military judge's decision to admit evidence over defense objection for an abuse of discretion.[47] An abuse of discretion occurs when a military judge's findings of fact are clearly erroneous, or if the military judge's decision is influenced by an erroneous view of the law.[48]

Mil. R. Evid. 803(6), also known colloquially as the business record exception, allows for the admission of records of a regularly conducted activity as an exception to the rule against hearsay. The proponent of the evidence must satisfy four elements:

> "(A) the record was made at or near the time by – or from information transmitted by – someone with knowledge; (B) *the record was kept in the course of a regularly conducted activity of a uniformed service . . .*; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness . . . ."[49]

*2. Analysis*

Appellant contends the military judge erred when, over defense objection as to foundation, she admitted into evidence Prosecution Exhibits 8 and 11, two computer-generated urinalysis testing registers associated with Appellant's urine sample.[50] Appellant does not dispute the authenticity of either exhibit and concedes that all foundational criteria under Mil. R. Evid. 803(6) were met, except Mil. R. Evid. 803(6)(B). Specifically, Appellant contends that Ms. Bravo lacked sufficient personal knowledge to confirm that these exhibits

---

[47] *United States v. Frost*, 79 M.J. 104, 109 (C.A.A.F. 2019) (internal citations omitted).

[48] *Id.*

[49] Mil. R. Evid. 803(6) (emphasis added).

[50] Trial defense counsel also objected based on authenticity, but that objection is not within the scope of the AOE.

were actually kept in the command's record-keeping system. This argument is without merit.

Ms. Bravo, who served as a command AUPC and urinalysis records custodian from October 2020 to January 2022, demonstrated that she thoroughly understood the command's record-keeping process.[51] Although she was no longer on active duty nor was she the records custodian at the time of trial, her testimony detailed the command's record-keeping system and process used in maintaining the records. She explained that the testing registers were created and collected on the day of each urinalysis, and she described the procedures and timelines associated with their storage. Ms. Bravo testified that it was a routine practice for the AUPCs, who were also the record custodians, to maintain and store these testing registers, including both Prosecution Exhibits 8 and 11, in accordance with urinalysis policy guidance.[52]

Furthermore, when examining the exhibits, Ms. Bravo identified them as belonging to the command based on the names of command personnel on the documents as well as from the command markings at the top of the page.[53] Ms. Bravo testified the command's standard practice was to keep these documents in a binder for three years in the regular course of business. Based on the date of both exhibits, she testified that both would have been stored in a binder located in the urinalysis office, and she confirmed that these records would have been maintained during her tenure as the AUPC and records custodian.

In *United States v. Garces*, the CAAF addressed the level of knowledge required for a witness to establish the proper foundation under Mil. R. Evid. 803(6).[54] The CAAF noted that the military rule "is identical to the corresponding Federal Rule."[55] This similarity was true then and remains true today.[56] In *Garces*, the CAAF, relying in part on the federal case law, rejected the more

---

[51] Despite not having been the AUPC or records custodian at the time of trial, Ms. Bravo had been an AUPC who served as the records custodian just a few months prior. Thus, she testified not as the current custodian, but as another qualified witness pursuant to Mil. R. Evid. 803(6)(D).

[52] R. at 768-71.

[53] R. at 784; R. at 791-92.

[54] 32 M.J. 345 (C.M.A. 1991).

[55] *Id.* at 347.

[56] *See generally Kim v. JP Morgan Chase Bank N.A. (In re Kim)*, 809 F. App'x 527, 540 (10th Cir. 2020) (citing *Wallace Motor Sales, Inc. v. Am. Motors Sales Corp.*, 780 F.2d 1049, 1061 (1st Cir. 1985) ("A qualified witness is simply one who can explain and be cross-examined concerning the manner in which the records are made and kept.") (internal citations removed).

stringent common law "intimate familiarity" standard.[57] Since *Garces*, this Court, as well as the CAAF have held that, in the case of a business record, a witness need only be generally familiar with the entity's record-keeping system.[58] As long as the witness is generally familiar with how the records are created and can testify from personal knowledge that the records are regularly received, kept, and relied upon in the normal course of business, that is sufficient under Mil. R. Evid. 803(6).

Therefore, this Court is fully satisfied that Ms. Bravo possessed sufficient knowledge to lay the foundation for the admission of Prosecution Exhibits 8 and 11 under Mil. R. Evid. 803(6). We find no abuse of discretion in the military judge's ruling admitting these exhibits.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[59]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

*Regina DiMaggio*

REGINA D. DIMAGGIO
Chief Commissioner
By Direction

---

[57] *Garces*, 32 M.J. at 347.

[58] *Id.* at 347 (internal citations omitted).

[59] Articles 59 & 66, UCMJ.